## FILLIPPON *v.* ALBION VEIN SLATE COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 241.   Argued March 18, 1919.—Decided May 19, 1919.

In response to an inquiry from the jury, who had retired to consider of their verdict, the trial court sent them a supplementary instruction in writing on a question of contributory negligence.  *Held* error, the parties and their counsel being absent and no opportunity being given them either to be present or to make timely objection. P. 80.

An opportunity afterwards to except to an instruction and to the manner of giving it is not equivalent to an opportunity to be present during the proceedings, since the prime and essential function of an exception is to direct the mind of the trial judge to the point in question so that he may reconsider and change his ruling if convinced of error. P. 81.

In jury trials erroneous instructions are presumptively harmful. P. 82.

An erroneous instruction may neutralize a correct one on the same subject and introduce material error. P. 83.

Under the law of Pennsylvania, a servant who goes on with perilous work under the peremptory orders of his master, although knowing the attendant danger and having time to consider, is not guilty of contributory negligence unless he knows, or has reason to suppose, that the danger is inevitable or imminent. P. 82.

242 Fed. Rep. 258, reversed.

THE case is stated in the opinion.

*Mr. Calvin F. Smith,* with whom *Mr. J. Willard Paff* was on the brief, for petitioner.

*Mr. Ralph B. Evans* for respondent.

MR. JUSTICE PITNEY delivered the opinion of the court.

This case involves an important question of trial practice. It was an action brought by Fillippon, a citizen of Italy and a subject of the King of Italy, against the Slate Company, a Pennsylvania corporation doing business in that State, to recover damages for personal injuries sustained by plaintiff while in the employ of defendant, due as alleged to the negligence of defendant's foreman or superintendent under whom plaintiff was working. The grounds of negligence alleged were the failure to furnish a reasonably safe place for the work, failure to warn plaintiff of latent dangers of the work and the dangerous method of doing it, and specifically that plaintiff was directed to do the work in a particular manner under orders and

instructions of defendant's foreman, to which plaintiff was bound to conform. There was a general plea of not guilty and a trial by jury. The evidence showed that the occurrence took place July 31, 1914, while plaintiff was at work in an open quarry under the direction of a foreman or superintendent and as one of a gang consisting of four quarrymen or blockmen besides plaintiff who assisted them as an ordinary laborer or "rubbish hand." It appeared that by the usual method of work, with which plaintiff was familiar, after a block of slate has been blasted out it is raised by crowbars and by wedges of wood or iron placed beneath it, in order that chains may be placed about it to which the hoisting tackle is made fast. In case the block is small the wedges are placed by the workman's hand, it not being necessary to insert them beyond the edge of the block. In case of large blocks, the wedges are put in by hand so far as this can be done without placing the hand beneath the block, and then a stick or the handle of a tool is employed in order to push the wedge farther in, the workman being thus protected from injury in case the stone should happen to slip or drop. Plaintiff's duty as rubbish hand was that of a general utility man, expected to do whatever the foreman or superintendent might direct. On the occasion in question a large block had been blasted out and was being raised in order that chains might be put about it. Plaintiff was assisting, and had inserted a wedge as far as he could push it without putting his hand beneath the stone, but it was necessary that the wedge should be pushed farther in, and he, being afraid that if he did this with his hand the block might fall upon his arm, told the foreman or superintendent that he wanted to get something with which to push the wedge. Instead of consenting, the foreman ordered him to "go ahead, go ahead," and in obedience to this he put his right hand beneath the block, when with a sudden movement the block came down on

his arm and crushed it so that amputation was necessary.

The trial judge submitted the question of defendant's negligence and of plaintiff's contributory negligence to the jury, saying, in his principal charge, among other things: "When a man accepts employment he assumes also with it the ordinary risk incident to such employment, and if you find the circumstances or situation in which the plaintiff found himself at the time of the accident, or that his performance leading up to the injury was of ordinary occurrence, then you may conclude that he had assumed the risk of the accident that has befallen him, and he cannot recover; but on his part it is contended that the situation in which he found himself at the time when the stone or slate block, properly speaking, was suspended or lifted by the men was of an extraordinary character, that the plaintiff when about to place the iron wedge found the stone or block large, and threatening danger, as he believed, whereupon he was suddenly and hastily summoned and directed to act by the foreman, whereupon he had but little or no time to judge of his own safety, and yielding to the judgment of his superior he acted. Now, if you find the facts as contended for by the plaintiff, I will ask you to say whether he was guilty of contributory negligence under the circumstances. Could he have protected or saved himself by the use or exercise of ordinary care? If he is to blame in part, or has in any manner contributed to his injury, he is not entitled to your verdict. The rule in negligence cases is, that while the defendant is held to exercise due and reasonable care under the circumstances, the plaintiff is also held to exercise the same degree of care, and if he does not do so, he cannot recover. Of course, if the master gives positive orders to go on with the work, under perilous circumstances, the servant may recover for an injury thus incurred, if the work was not inevitably or imminently dangerous. If the danger was

imminent that faced the plaintiff, and he in the face of
it did the thing that he knew, as a reasonably careful
man, under the circumstances, was dangerous, he is
guilty of contributory negligence and cannot recover."

The bill of exceptions shows that after the trial judge
had completed his instructions and the jury had retired
for deliberation, and while they were deliberating, the
jury sent to the judge the following written inquiry:
"Whether the plaintiff in pushing the wedge beneath
the block of slate with his hand, having full knowledge
of the risk involved, thereby became guilty of contribu-
tory negligence, even though told by Foreman Davis to
'push it under.'" To which the trial judge replied by
sending the following written instruction to the jury
room, in the absence of the parties and their counsel,
without their consent, and without calling the jury in
open court: "If he was told to put it under as stated by
the plaintiff and he did so, fully appreciating at the time
the danger attending and having sufficient time to con-
sider, when he was face to face with a situation that would
have made a reasonably prudent man to disobey the
orders of the foreman, notwithstanding, and he went
ahead in spite of the dangers known to him and apparent,
he is guilty of contributory negligence."

To this action of the court plaintiff excepted at the first
opportunity upon grounds that raise two questions: (a)
Whether it was erroneous to give this supplementary
instruction in the absence of the parties and without call-
ing the jury in open court, and (b) whether the instruc-
tion so given was erroneous.

The jury having returned a verdict in favor of defend-
ant, and a motion for a new trial having been denied,
the resulting judgment was brought under the review
of the Circuit Court of Appeals and there affirmed. 242
Fed. Rep. 258. Thereupon this writ of certiorari was al-
lowed.

We entertain no doubt that the orderly conduct of a trial by jury, essential to the proper protection of the right to be heard, entitles the parties who attend for the purpose to be present in person or by counsel at all proceedings from the time the jury is impaneled until it is discharged after rendering the verdict. Where a jury has retired to consider of its verdict, and supplementary instructions are required, either because asked for by the jury or for other reasons, they ought to be given either in the presence of counsel or after notice and an opportunity to be present; and written instructions ought not to be sent to the jury without notice to counsel and an opportunity to object. Under ordinary circumstances, and wherever practicable, the jury ought to be recalled to the court room, where counsel are entitled to anticipate, and bound to presume, in the absence of notice to the contrary, that all proceedings in the trial will be had. In this case the trial court erred in giving a supplementary instruction to the jury in the absence of the parties and without affording them an opportunity either to be present or to make timely objection to the instruction. See *Stewart* v. *Wyoming Ranche Co.*, 128 U. S. 383, 390; *Aerheart* v. *St. Louis, I. M. & S. Ry. Co.*, 99 Fed. Rep. 907, 910; *Yates* v. *Whyel Coke Co.*, 221 Fed. Rep. 603, 608; and many decisions of the state courts collated in 17 L. R. A., N. S., 609, note to *State of North Dakota* v. *Murphy*, 17 N. Dak. 48.

The Circuit Court of Appeals considered that the jury had asked a plain question in writing concerning a matter of law, and the judge had answered it in writing plainly and accurately, and were of the opinion that since nothing else had occurred—the question and answer having been preserved of record and counsel having been promptly notified of what had taken place and given the opportunity of excepting to the substance of the instruction and to the manner of giving it—no harm had been done, and none

was probable to arise under like circumstances, and hence affirmed the judgment.

It is not correct, however, to regard the opportunity of afterwards excepting to the instruction and to the manner of giving it as equivalent to an opportunity to be present during the proceedings. To so hold would be to overlook the primary and essential function of an exception, which is to direct the mind of the trial judge to the point in which it is supposed that he has erred in law, so that he may reconsider it and change his ruling if convinced of error, and that injustice and mistrials due to inadvertent errors may thus be obviated. *United States* v. *U. S. Fidelity Co.*, 236 U. S. 512, 529; *Guerini Stone Co.* v. *Carlin Construction Co.*, 248 U. S. 334, 348.

And of course in jury trials erroneous rulings are presumptively injurious, especially those embodied in instructions to the jury; and they furnish ground for reversal unless it affirmatively appears that they were harmless.

In this case, so far from the supplementary instruction being harmless, in our opinion it was erroneous and calculated to mislead the jury in that it excluded a material element that needed to be considered in determining whether plaintiff should be held guilty of contributory negligence under the particular hypothesis referred to in the jury's question.

The case was governed by the law of Pennsylvania, where the injury was received and the trial took place. Rev. Stats., § 721. The law of that State, as it stood when the cause of action arose [1] is expressed in repeated decisions of its court of last resort to the following effect: "Where the servant, in obedience to the requirement of the master, incurs the risk of machinery, which though dangerous, is not so much so as to threaten immediate injury, or where it is reasonably probable it may be safely

---

[1] See Workmen's Compensation Act of 1915, Pa. Laws 1915, p. 736.

used by extraordinary caution or skill, the rule is different. In such case the master is liable for a resulting accident." And, with reference to the particular circumstances of the case there under consideration: "If the defect was so great, that obviously, with the use of the utmost skill and care, the danger was imminent, so much so, that none but a reckless man would incur it, the employer would not be liable." *Patterson* v. *Pittsburg & Connellsville R. R. Co.*, 76 Pa. St. 389, 394. "If the master gives the servant to understand that he does not consider the risk one which a prudent person should refuse to undertake, the servant has a right to rely upon his master's judgment, unless his own is so clearly opposed thereto that, in fact, he does not rely upon his master's opinion. A servant is not called upon to set up his own unaided judgment against that of his superiors, and he may rely upon their advice and still more upon their orders, notwithstanding many misgivings of his own. The servant's dependent and inferior position is to be taken into consideration; and if the master gives him positive orders to go on with the work, under perilous circumstances, the servant may recover for an injury thus incurred, if the work was not inevitably and imminently dangerous." *Williams* v. *Clark*, 204 Pa. St. 416, 418. To the same effect, *Glew* v. *Pittsburgh Railways Co.*, 234 Pa. St. 238, 242, 243; *Moleskey* v. *South Fork Coal Mining Co.*, 247 Pa. St. 434, 437, 438.

In the present case the trial judge recognized this to be the applicable rule of law when orignally instructing the jury, for he said: "Of course, if the master gives positive orders to go on with the work, under perilous circumstances, the servant may recover for an injury thus incurred, if the work was not inevitably or imminently dangerous." But this was neutralized, and the jury probably led astray, when in the supplementary instruction they were told, in effect, that if, when plaintiff obeyed the foreman's order by putting the wedge beneath the heavy

block of slate with his hand, he fully appreciated the attendant danger and had sufficient time to consider, and if the situation was such as would have made a reasonably prudent man disobey the order, and he went ahead in spite of the dangers known to him and apparent, he was guilty of contributory negligence. The effect of this was to bar a recovery if the plaintiff knew of the attendant danger, although he did not know or have reason to suppose that the danger was inevitable or imminent, that is, immediately threatening. We suppose it hardly could have been a point in dispute that plaintiff knew that the operation of pushing the wedge beneath a large block of slate with his hand was dangerous, for he was familiar with the work, knew what safeguard was customarily taken against this danger, expressed a fear of it upon the particular occasion, and requested time to get an implement to be used for his safety according to the custom. It was at this precise moment, according to the testimony, that the foreman or superintendent told him to "go ahead, go ahead"; and under the Pennsylvania decisions he was entitled to rely upon the judgment and order of his superior if the work was not inevitably and imminently dangerous; that is, threatening immediate injury upon the particular occasion. The jury very reasonably might conclude that neither plaintiff nor the foreman believed or had reason to believe that the work was inevitably and imminently dangerous; but if it was not, he was entitled, under the Pennsylvania decisions, to hold his employer responsible for the consequences of what he did under peremptory orders of the foreman, although he (the plaintiff) fully appreciated the general dangers, had time to consider, and went ahead notwithstanding.

*The judgment under review will be reversed, and the cause remanded to the District Court for further proceedings in conformity with this opinion.*