## SOUTHERN PAC. CO. v. SMITH et al. *

### No. 7673.

Circuit Court of Appeals, Ninth Circuit.

April 20, 1936.

Francis M. Hartman, of Tucson, Ariz., and Chas. L. Rawlins, of Phœnix, Ariz. (Guy V. Shoup, of San Francisco, Cal., of counsel), for appellant.

William R. Chambers, Ralph W. Bilby, and Richard H. Chambers, all of Tucson, Ariz., for appellees.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

DENMAN, Circuit Judge.

Plaintiff sued the Southern Pacific Company for damages to their cultivated lands situated along the easterly side of defendant's railway track in the county of Greenlee, state of Arizona. Their complaint alleges that in the months of July and August, 1930, 1931, and 1932, the railroad embankment across one canyon water course and the embankment and bridge across another of two adjoining canyons obstructed the flow of flood waters of the canyon watersheds and caused them to accumulate on the westerly side of the track and from there cross the track and invade plaintiffs' lands, injuring different parcels then under cultivation. The complaint alleges that the inadequacy of the stream opening in the bridge of the canyon called the North Canyon had caused a silting up

*Rehearing denied June 8, 1936.

of the channel and the deposit of rocks and débris in the channel lying to the westerly which defendant had failed to remove.

The plaintiffs also complain that the defendant railway company had removed débris and rock, deposited on the railroad in prior flood conditions, to the west of the track in such a way that the water of the floods causing the damage complained of were accumulated and thrown across the slight rise between the North Canyon and the watershed of another canyon called the South Canyon. It is alleged that this water combining with the flood waters of the South Canyon flowed over the lands and crops of plaintiffs on the opposite lower side of the track, causing the claimed damage.

The railroad company denied the obstruction of the flow of the waters of both canyon watersheds. Upon trial the jury brought in separate verdicts for the plaintiffs on eight counts or causes of action, totaling $3,637.50. A part of appellant's errors assigned concern the question whether the evidence of obstruction of the waters by defendant sustained the verdict.

The evidence was sharply conflicting. The railroad company's engineers made a strong case for the impossibility of the flow of the water from the North Canyon watershed to the lands in the South Canyon. Their testimony also negatived any disposition of the rocks and débris so as to divert the waters onto plaintiffs' land. There was, however, sufficient testimony to sustain the verdict of the jury from a witness of the plaintiffs that the obstructions were created by the defendant in the manner described in the complaint and that they caused the injury.

The railroad company also contended that the waters causing the injury to plaintiffs' land and crops were "surface waters," and that in Arizona the common-law rule prevails, according to which the upper landowner is entitled to divert the waters from his own properties without responsibility for damage to those below injured by the diversion. This contention cannot be sustained. There was abundant evidence to show that the waters were not surface waters flowing across the unchanneled area, but that they were waters confined to the two distinct watersheds of the two canyons.

■ The complaint comprised eight counts, each stating a cause of action for damages resulting from a separate flood. A portion of the damage claimed in each count is that the waters diverted to the lands of the plaintiffs carried with them manure from accumulated piles into the well and dwelling house on plaintiff's property, and that it stood in stagnant pools causing noxious odors. At the close of the trial the defendant requested an instruction to the effect that the jury could not consider smells from manure as an item of damage. This instruction applied generally to all the counts and not to any particular count. It was refused. In urging such refusal as error, appellant in its brief calls attention to items of evidence tending to show that none of the plaintiffs at the time of the floods in question lived in the dwelling house affected by the noxious odors. Assuming that such was the case, it does not follow that plaintiffs suffered no damage, in view of the testimony of plaintiff Robert W. Guess to the effect that: "There was damage on those occasions to the house and barn. It was the head quarters; used for head quarters. The water was running around it, and it ran around all the tools, and all the other things we had there in the shed, and we had no place to take them out to. We had to wade through mud all around there. The manure and stuff ran into the well and ruined the water."

If the house was used by plaintiffs for any purpose, we cannot say that the jury was not justified in finding some damage to plaintiffs by reason of the noxious odors. The court carefully instructed the jury that they must find as damages only such pecuniary losses as were established by the evidence, and must disregard any damages· that were uncertain, contingent, or speculative.

■ We presume, of course, that the jury followed the court's instruction in this regard, and that their verdict was justified by the evidence; particularly in view of the fact that the appellant has not seen fit to include in its bill of exceptions a full statement of the evidence showing damage to the appellees, except with regard to the first and second counts. After setting out the testimony of Guess as to specific items of damage under the first and second counts, the bill of exceptions states: "(Plaintiff then testified in support of his claim for damages to his lands, crops, ditches, and pumps as alleged in the other counts of the complaint.)" The parties

having contented themselves with this general statement, we must, of course, assume that all elements of damage found by the jury were sufficiently proved.

■■ On the first count, however, the testimony as to damages suffered is specific and itemized. The items all told amount to less than the verdict on this count and do not include noxious odors from manure. The discrepancy represents an insufficiency of evidence to support the separate verdict, whether the excess represents the jury's notion as to manure, or as to some other unspecified item of damage. Had exception properly been taken, the insufficiency of the evidence to support the verdict on the first count might justify a reversal. However, the exception to the refusal to instruct the jury that they could not consider smells from manure an item of damage was a general one, not limited to the first count. Such being the case, it is not sufficiently specific to reserve the point. "The primary and essential function of an exception * * * is to direct the mind of the trial judge to the point in which it is supposed that he has erred in law, so that he may reconsider it and change his ruling if convinced of error, and that injustice and mistrials due to inadvertent errors may thus be obviated." Fillippon v. Albion Vein Slate Co., 250 U.S. 76, 82, 39 S.Ct. 435, 437, 63 L.Ed. 853.

■ The same objection is fatal to the defendant's exception to the charge of the court in its entirety, on the ground that the evidence did not support the allegations of damage included in the pleadings.

Affirmed.