THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MATÍAS GONZÁLEZ RAMÍREZ, Defendant and Appellant.

No. 11564. Argued December 13, 1946.—Decided February 4, 1947.

852

*Font & Vivas* for appellant. *Luis Negrón Fernández, Acting Attorney General (E. Campos del Toro,* former *Attorney General,* on the brief) and *Joaquín Correa Suárez, Assistant Prosecuting Attorney,* for appellee.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

Matías Ramírez was convicted of murder in the second degree. He moved for a new trial, which was denied, and the court sentenced him to ten years' imprisonment in the penitentiary. The present appeal has been taken from the order denying a new trial and from the judgment.

The first assignment is based on the ground that, while the jury was deliberating, third persons communicated with it and delivered to it models of the verdict which were not ordered by the court with the intervention of the parties. The appellant maintains that such action violates the rules of the court and impairs the right which every accused has to an impartial trial. According to the evidence introduced at the hearing on the motion for a new trial, the following facts occurred:

While the jury was in the jury room, the deputy marshal of the district court, who had the jury under his custody, was summoned by the jury. When he heard the call bell, the deputy marshal considered that the jury had agreed upon a verdict and went to the jury room. When he arrived there one of the jurors requested him, if possible, to obtain for them a blank form of verdict because the one given to them by the court had been spoiled. The deputy marshal went to the clerk and the latter delivered to him a blank form of verdict, which he in turn delivered to the foreman of the. jury. In that same blank form the verdict against the defendant was written.

Juror Jesús Cales identified the verdict as that which was rendered. He testified that they, the members of the jury, obtained the blank form through Deputy Marshal

Godoy; that the jury requested the blank form from the deputy marshal because the one given to them by the court had been spoiled; that he saw the blank form which was spoiled.

In the order denying a new trial the judge of the lower court expressly stated "that he examined the verdict of the jury as it appears from the record and also the one originally given to the foreman of the jury, which does not appear from the record, and that both are identical"; that from the evidence introduced it appeared that the marshal did not communicate with the jury in any way regarding the merits of the case; that the evidence showed that when the members of the jury called the marshal, they had already reached an agreement in the case, and that when they were putting it in writing, that is, when filling the corresponding blank space in the model of verdict which had been given to them by the court, the blank form was spoiled; that the marshal, therefore, could not have influenced, nor did influence, as was shown by the evidence, the decision of the case.

Section 267 of the Code of Criminal Procedure provides as follows:

"After hearing the charge, the jury may either decide in court or may retire for deliberation. If they do not agree without retiring, an officer must be sworn to keep them together in some private and convenient place, and not to permit any person to speak to or communicate with them, nor to do so himself, unless by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed, or when ordered by the court."

In *People* v. *Saldaña*, 66 P.R.R. 181, applying to the facts of the case said § 267 and the doctrine laid down in numerous decisions by the state and federal courts, we held that the lower court had committed an error prejudicial to the rights of the defendant when, after the jury had informed the judge, through the bailiff, that it desired to return to the courtroom since it could not agree, the judge confined

himself to instructing the bailiff to inform the jury to continue deliberating, nothwithstanding the fact that counsel for the defendant asked the judge to grant the request of the jury. A half-hour after the jury received the communication from the judge, it rendered its verdict finding the defendant guilty of involuntary manslaughter. In reversing the judgment and ordering a new trial, we said:

"The court erred, we think, in not consenting to the wishes of the jury to return to the courtroom, and in ordering the jury, in the informal manner in which it did, to continue deliberating. There should be no communication between the judge and the jury after the cause is submitted to their consideration, unless it be in open court and in the presence of the defendant and his counsel, or after having given them an ample opportunity to be present. (Citing authorities.) Whenever the court or any of its officers commits the error of communicating with the jury regarding the case outside of the courtroom, the error is presumed to be prejudicial unless it is affirmatively shown that there has been no prejudice."

The conduct of the deputy marshal was undoubtedly improper and, as such reprehensible. The marshal who has the jury under his custody should absolutely refrain from stating or doing anything which might be connected in any way with the case under consideration by the jury. The marshal and the officers under his authority should confine their intervention with the jury to such acts or words as are absolutely required to supply the needs of the jury or for the comfort of its members, their food, and lodging. The strict observance of this rule will avoid complaints and objections of the kind involved in this case, and will undoubtedly contribute to uphold the prestige of the institution of the jury.

In *Shields* v. *United States*, 273 U. S. 583, 71 L. ed. 787, the jury, after having been deliberating for two hours sent a written communication to the judge, to the effect that they found three of the defendants guilty, another two not guilty, and that they were unable to agree as to

three of the defendants. The judge sent back a written answer stating that they must also decide whether those three defendants were guilty or not guilty. The defendants and their counsel were not advised of these communications between the judge and the jury. Shortly after the jury received the communication from the judge, they rendered their verdict, finding two of the defendants guilty on the first count. Two months afterward, upon learning what had happened, the defendant requested the court to grant him an exception. The court refused, on the ground that counsel for the defendant had requested the court to hold the jury in deliberation until they should agree upon a verdict. The Supreme Court reversed the judgment and ordered a new trial, holding that: "Where a jury has retired to consider of its verdict, and supplementary instructions are required, either because asked for by the jury or for other reasons, they ought to be given either in the presence of counsel or after notice and an opportunity to be present; and written instructions ought not to be sent to the jury without notice to counsel and an opportunity to object." *Fillippon* v. *Albion Vein State Co.,* 250 U. S. 76. In *Little* v. *United States,* 73 F. (2d) 861, the error which caused the reversal of the judgment consisted in that after the jury had sent a note to the judge at his chambers asking for a copy of the court's instructions, the judge in open court and in the presence of counsel for the defense, who raised an objection, instructed the stenographer to attend in the jury room and read the instructions in their entirety, with no repetition or emphasis on any part thereof. Upon reversing the judgment the Circuit Court said:

". . . But sending a stenographer into the jury room, there to read, in the absence of the defendant and his counsel, the charge of the court, stands in very different stead. No harm may come from it, it is true; but on the other hand, a mistake in the reading of a shorthand symbol which defense counsel would instantly detect, an unconscious or deliberate emphasis or lack of it, an innocent attempt

to explain the meaning of a word or a phrase, and many other events which might readily occur, would result in irremediable prejudice to the defendant. . . . .

". . . . In the case at bar, the record is silent as to what occurred in the jury room. *There is nothing therefore in this record to support a finding, affirmatively made in the cited cases, that the error was necessarily harmless.*" (Italics ours.)

The Federal Supreme Court in *Mattox* v. *United States,* 146 U. S. 140, 36 L. ed. 917, established the following rule:

"Private communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least *unless their harmlessness is made to appear.*" (Italics ours.)

In *Outlaw* v. *United States,* 81 F. (2d) 805, the jury after prolonged deliberation sent a communication to the judge informing him that they desired a copy of the instructions. The judge ordered the stenographer to write them out, checked them, and sent them to the jury room. Neither the defendant nor his counsel learned of the occurrence until after the verdict had been returned and the jury discharged. The question raised on appeal was "that the judge should have held no communication with the jury except in open court with the knowledge of the accused and his counsel." The Circuit Court affirmed the judgment, saying:

". . . . While a private communication between judge and jury is usually irregular and erroneous, it may not in all cases prevent a constitutional or a legal trial. Many misconducts of jurors do not so result, *but may be purged by showing that no prejudice could have resulted.* If the judge in this case had delivered any objectionable or even any new instruction to the jury, we would be prepared to hold that denial of the opportunity to hear it and to take exception to it ought to work a new trial. *Because it clearly appears that the jury got only exactly what had already been given them* without objection and in a form usual in Texas and not now complained of, *we think that no substantial right* was infringed, and the error in procedure may be regarded as a technical one. If the jury had been recalled and the charge read to them in appellant's presence, no different result can be supposed." (Italics ours.)

The cases which we have just analyzed, and many others cited in *People* v. *Saldaña, supra,* uphold the doctrine which was laid down in said case, namely, that "whenever the court or any of its officers commits the error of communicating with the jury regarding the case outside of the courtroom, the error is presumed to be prejudicial unless it is affirmatively shown that there has been no prejudice."

Applying that doctrine to the facts of the present case, and it having been affirmatively shown that no prejudice whatever was caused to the defendant but that, on the contrary, what the marshal did in this case was for the convenience of the jury within the meaning of footnote 2, *People* v. *Saldaña, supra* p. 181, we think, and so hold, that the order and judgment appealed from should be affirmed.

We deem it unnecessary to discuss the second assignment, as it is clearly frivolous.

MR. JUSTICE TODD, JR., dissenting:

In my opinion, the incident that took place in this case is more reprehensible and its acceptance as harmless error more serious than what occurred in *People* v. *Saldaña,* 66 P.R.R. 181, which led to our reversal of the judgment and the ordering of a new trial. It should be remembered that in *People* v. *Saldaña* the following occurred: "Sometime after the jury which heard the case had been deliberating, it informed the judge, through the bailiff, that it desired to return to the courtroom since it could not agree. *Counsel for the defendant was present* and he asked the judge to grant the request of the jury, but the judge confined himself to instructing the bailiff to inform the jury to continue deliberating. A half-hour later the jury rendered its verdict finding the defendant guilty of involuntary manslaughter and recommended 'the greatest mercy of the court in view of the attendant circumstances.' Counsel for the defense requested that the verdict be set aside, because of what had happened when the jury reported that it could not agree, al-

leging that this brought about a verdict by compromise. The court denied the motion . . .'' (Italics ours.) And we held that ''There should be no communication between the judge and the jury after the cause is submitted to their consideration, unless it be in open court and in the presence of the defendant and his counsel, or after having given them an ample opportunity to be present.''

I maintain that the incident in the present case deserves greater censure because the bailiff violated the provisions of § 267 of the Code of Criminal Procedure which prohibits ''any person *to speak to or communicate with them, nor to do so himself, unless by order of the court,* or to ask them whether they have agreed upon a verdict, . . .''. (Italics ours.) The bailiff in this case upon being called by the jury and informed that the model of the verdict which the court had given it when retiring to deliberate, had been spoiled, had no authority, without permission of the court granted in the courtroom and in the presence of the defendant and his counsel, to obtain a new model of verdict from the clerk and take it to the jury. Nor did the clerk have authority to prepare a new model, of his own account, and send it to the jury. Both actions were carried out without ''the express order of the court'' required by § 267, *supra,* and to accept that officers of the court may communicate with the jury in order to substitute an official document without requiring an order from the court, and without the intervention of the defendant is, in my opinion, to establish a precedent contrary to the express provision of the law. According to the decisions cited in the *Saldaña* case, *supra,* the error is fatal ''although the contents of the communication are not improper, since the defendant is deprived of his right to be present at all stages of the trial.'' And before a verdict is rendered by the jury, any incident that takes place in the jury room requiring the intervention of the court constitutes a ''stage'' of the trial. Defendant is entitled to be present

". . . from the time the jury is impaneled until its discharge after rendering the verdict." *Shields* v. *United States*, 273 U. S. 583.

As stated in *State* v. *Wroth*, 47 Pac. 106: "It is the lawful right of a party to have his cause tried in open court, with opportunity to be present and heard in respect to *everything transacted*. It is his right to be present and attended by counsel whenever it is found necessary or desirable for the court to communicate with the jury, and *he is not required to depend upon the memory or sense of fairness of the judge as to what occurs between the judge and jury at any time or place when he has no lawful right to be present.* . . ." (Italics ours.)

Similarly, in the case at bar the defendant can not be required to depend on the memory or the sense of justice of the bailiff or the clerk as to what occurred between them and the jury at a time when defendant was not present. We should not forget that in the *Saldaña* case, *supra*, the judge did not communicate directly with the jury but through the bailiff and it was decided that this did not lessen the evil but rather increased it. In the case at bar the clerk and the bailiff had a new model of the verdict reach the jury which, according to the memory of the judge, was identical to the original one. The defendant is not bound either to depend on the memory of the judge or of the jury as to said facts. The defendant was entitled under the law that any change to be made in the official documents in possession of the jury should be made in open court and in his presence. In my opinion the presumption that the error committed was prejudicial was not overcome by the evidence.

To my judgment there is a contradiction in maintaining that the conduct of the bailiff was, undoubtedly, improper and reprehensible and that he as well as the officers under his authority should limit their intervention with the jury to those acts or words specified in § 267, *supra*, and at the same time deciding that "what the marshal did in this case was

for the convenience of the jury within the meaning of footnote 2, *People* v. *Saldaña, supra,* p. 181 . . ."

In said footnote 2 we said that the rule with respect to the presumption of a prejudicial error in these cases "is not applicable to those communications foreign to the case which are required for the comfort of the jury, such as those dealing with food and lodging for the jury . . ." or "such as the inquiry by the bailiff to the jury whether it has reached an agreement . . .". If what the bailiff did in this case was for the convenience of the jury within the scope of footnote 2, there is no reason to qualify such conduct as improper or reprehensible. I believe that the judgment should be reversed and a new trial ordered.