## HARTOL PETROLEUM CORP. v. CANTE-LOU OIL CO., Inc.

### Civ. No. 8011.

United States District Court
W. D. Pennsylvania.
Sept. 29, 1952.

374

Sebastian Pugliese, Pittsburgh, Pa., for plaintiff.

James Arensberg, Pittsburgh, Pa., for defendant.

STEWART, District Judge.

Plaintiff brought this action to recover the price of oil delivered by it to the defendant pursuant to a contract between them. Defendant contends that it not only paid for all oil delivered pursuant to the contract, but that it actually overpaid. The controversy arose because of the divergent views of the parties as to the meaning of the term "price posted" as used in the contract. The case was tried before a jury and on April 16, 1952, a verdict was returned in favor of the plaintiff for the amount claimed.

Thereupon, defendant filed an alternative motion for judgment or new trial. Although several grounds are included in the motion, two are pressed in defendant's brief and only these two require any discussion.

Defendant first contends that plaintiff failed to prove its case. The sole issue in this case was the interpretation of the contract. Plaintiff agreed that the price charged defendant for oil would "at no time be higher than the price posted by either Standard Oil Company of New Jersey or Tide Water Associated Oil Company". During the term of the contract, Standard Oil of New Jersey granted a "summer fill-up discount", with a resultant price to its customers less than that charged defendant by plaintiff. Defendant argued that the term "price posted" has a definite meaning in the petroleum trade and required plaintiff to reduce its price to that charged by Standard Oil during the period of the "summer fill-up discount". Plaintiff agreed that the term "posted price" or "price posted" has a definite meaning in the trade but disagreed with defendant as to that meaning, contending that the "summer fill-up discount" was not part of the "posted price" but rather a special discount therefrom. Consequently, there was an issue of fact as to the meaning in the trade of the term "price posted" or "posted price" used by the parties in their contract.

■ ■ It is, of course, hornbook law that the construction of a written contract is for the Court. Questions of fact incidental to the construction of a written contract must, however, be resolved by a jury. The Court having determined, with the complete acquiescence of both counsel, that the term "price posted" or "posted price" as used by the parties in their dealings and in their written contract was one having a special meaning in the petroleum industry and the parties being unable to agree as to the meaning of this trade term, it became necessary to establish its meaning from the testimony of persons in the petroleum industry qualified to express an opinion in this regard. Expert testimony was presented by the parties in support of

their respective contentions as to the meaning of the term, and the jury, under the instruction of the Court, was required to resolve this conflict. This they did by returning a verdict in favor of the plaintiff. The jury's verdict is amply supported by the evidence. The defendant's first contention is, therefore, without merit.

Counsel for the defendant states the second question as follows:

"The Court erred in instructing the jury solely in the presence of counsel for plaintiff without notice of such instruction to counsel for defendant."

The statement of the question thus is so misleading that we cannot allow it to pass without comment. First of all, the question as stated implies that the Court notified counsel for the plaintiff and did not notify counsel for the defendant. This is untrue as the record shows. Sebastian C. Pugliese, of this bar, tried the case for the plaintiff. He was not present when the Court answered the two questions which the jury had submitted, because he, like counsel for the defendant, left the building immediately after the jury retired to deliberate on their verdict. Charles P. Connell, Esq., of New York City, whose firm apparently represents the plaintiff as general counsel, was present throughout the trial. He did not conduct the trial in any way. He is not a member of the bar of this Court and his special admission for the purpose of the trial of this case was not moved. Mr. Connell did not leave the building after the jury retired to deliberate but remained in the corridor outside the Courtroom. When the jury returned to the Courtroom for the purpose of having their questions answered by the Court, Mr. Connell was present because he observed that the jury had returned. The Court did not notify him nor did the Court notify Mr. Pugliese, the actual counsel for the plaintiff. We therefore state as a fact that neither trial counsel was present at the time the Court answered the questions submitted by the jury and that no counsel was notified by the Court. The implication contained in the question as stated by counsel for the defendant that the Court favored counsel for the plaintiff is unwarranted and totally unsupported by the record. The record shows clearly enough what took place. After the jury retired the Court asked counsel whether they wished to be present when the verdict was received, page 47. Counsel for the plaintiff indicated that he did not care to be present unless there was some question as to the form of the verdict. Counsel for the defendant made no answer. The Court then inquired whether counsel wished to be present if the jury required further instruction and stated that he would endeavor to get counsel to discuss any further instructions that might be given. Counsel for the defendant stated "I am not too worried about it. I will be at my office during the afternoon." At 2:30 p. m. the jury sent two questions to the Court. These questions have been made part of the record as Court Exhibit No. 1. They were:

"1. Did Hartol Petroleum Corporation grant a summer fill-up discount to any other of its accounts during April 1 to August 31, 1948?"

"2. Must we have to have 12 to agree to a verdict?"

The jury returned to the Courtroom and the Court answered the jury's questions, as appears at pages 48 and 49 of the Record: First, that there was no evidence as to Question 1 and that this inquiry was immaterial to the issue in any event, and as to Question 2 that a verdict must be unanimous. Counsel for the defendant implies that the Court inadvertently failed to call counsel because we had already commenced the trial of another case. There was nothing inadvertent about the failure to call counsel. We did not call counsel because we considered that there was no occasion to call them since there was nothing to discuss with counsel. The jury asked for no further instructions as to the law of the case on which counsel should have been consulted or might have wished to be heard. The first question could have received but one answer: the answer the Court gave. Counsel for the defendant, when the Court explained at the time of the verdict what had taken place and that the jury had been told that there was no evidence regarding the summer fill-up discount on the part of Hartol, stated, in

agreement with counsel for the plaintiff, "I don't believe the record showed anything on that score either", page 51. Neither counsel raised any objection as to the answer given to Question 1, and, of course, no objection was raised as to what the Court told the jury regarding Question 2.

Nevertheless, the defendant's counsel takes the position that the failure to summon him to the Courtroom when these questions propounded by the jury were answered amounts to such a denial of due process as to entitle him to a new trial. Counsel relies on Arrington v. Robertson, 3 Cir., 1940, 114 F.2d 821, in which case the opinion was written by Judge Maris, and on Fillippon v. Albion Vein Slate Co., 250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853. These two authorities involve very different situations from that present here. In both those cases, the Court sent written instructions to the jury. In the Arrington case there was nothing in the record to show what the inquiry of the jury was or what had been done except that the Court had sent to the jury written points which had been submitted by the plaintiff's counsel.

In the Arrington case, the Court makes it clear why it regards the sending of instructions to the jury from the Judge's Chambers, in the absence of counsel and without notice, as a denial of due process:

"The inquiry of the jury and the trial judge's response were not reported by the court stenographer. The record does not disclose the phraseology of the jury's question. Consequently we cannot know whether the instructions given, even though entirely sound as abstract legal statements, were appropriate to answer it, or whether additional instructions, appropriate and indeed necessary to supplement those given, might not have been suggested to the trial judge by counsel for the defendant if he had been given the opportunity to be present." 114 F.2d at page 823.

Likewise in the Fillippon case, the Court gave additional instruction to the jury on a very important phase of the case—contributory negligence—by sending a written answer to the jury's inquiry to the jury room without notice to counsel and without any submission of the proposed answer to counsel. Moreover, the Supreme Court found the instructions given to be erroneous. In Fillippon v. Albion Vein Slate Co., supra, the Supreme Court described the rights of the parties as follows, 250 U.S. at page 81, 39 S.Ct. at page 436:

"We entertain no doubt that the orderly conduct of a trial by jury, essential to the proper protection of the right to be heard, entitles the parties who attend for the purpose to be present in person or by counsel at all proceedings from the time the jury is impaneled until it is discharged after rendering the verdict. Where a jury has retired to consider of [its] verdict, and supplementary instructions are required, either because asked for by the jury or for other reasons, they ought to be given either in the presence of counsel or after notice and an opportunity to be present; and written instructions ought not to be sent to the jury without notice to counsel and an opportunity to object. Under ordinary circumstances, and wherever practicable, the jury ought to be recalled to the courtroom, where counsel are entitled to anticipate, and bound to presume, in the absence of notice to the contrary, that all proceedings in the trial will be had. In this case the trial court erred in giving a supplementary instruction to the jury in the absence of the parties and without affording them an opportunity either to be present or to make timely objection to the instruction."

These authorities make it clear that the objectionable feature of both cases was that the Judge instructed the jury without bringing them in Open Court and without making clear upon the record the circumstances surrounding the instruction, so that counsel if present could have suggested corrections or if not present could have taken timely objections. As we have pointed out the instructions given to the jury in this case were given in Open Court, the record clearly shows what was done and counsel were not notified because

the Court considered that the questions propounded by the jury required no discussion and could be answered in only one way, with which conclusion counsel agreed upon being informed of what had taken place. Moreover, counsel were given an opportunity to take exception to what was done.

■ Voluntary absence of counsel at any time between the impaneling of the jury and the return of the verdict is construed as a waiver of the right to be present. Stewart v. Wyoming Cattle Ranche Co., 128 U.S. 383, at page 390, 9 S.Ct. 101, 32 L.Ed. 439; Arrington v. Robertson, supra, 114 F.2d at page 823. Counsel for the defendant seems to suggest that his absence was in reliance on the Court's statement that if further instructions were called for, counsel would be sent for. This does not completely coincide with our impression of what was intended by counsel for the defendant. His statement, page 47, "I am not too worried about it. I will be in my office during the afternoon." suggested that he had no intention of remaining in the Courtroom while the jury was deliberating. He did not we believe change his intentions in any way on the basis of what the Court said. The Court raised the question of calling counsel if further instruction was required, but we certainly did not mean that we would call counsel under all circumstances regardless of what the further instruction might be. It is not, we think, too much to state that had we summoned counsel to return to the Courtroom while the Court answered the questions submitted by the jury, he would have regarded it as an unnecessary imposition on his time. We certainly considered it unnecessary to summon either counsel. The conduct of defendant's counsel may very well be considered as a waiver of his right to be present, at least to the extent of relying on the judgment of the Court as to whether he needed to be present when the jury received further instruction.

■ Finally, even if our failure to summon counsel for the parties before we answered the questions submitted by the jury was error, we believe that the defendant's motion must be denied under Rule 61 of the Federal Rules of Civil Procedure, 28 U.S.C., since the error was not in any sense prejudicial to the defendant. To hold otherwise would require us to say that the defendant was prejudiced by the absence of its counsel, even though the instructions which were given in his absence were later acquiesced in by him and even though they in no way prejudiced the defendant's rights.

The defendant's motion for judgment or a new trial is denied.