**R. J. GARDNER and Mavis Goode Gardner, Plaintiffs-Appellants,**

v.

**Paul MORRISON, Defendant-Appellee.**

**No. 28526.**

United States Court of Appeals, Fifth Circuit.

May 8, 1970.

Rehearing Denied and Rehearing En Banc Denied June 16, 1970.

A. Cecil Palmour, Summerville, Ga., G. Coke Williams, Anniston, Ala., for appellants.

Archibald A. Farrar, F. H. Boney, Summerville, Ga., for appellee.

Before COLEMAN, GOLDBERG and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Appellants R. J. Gardner and his wife, Mavis Goode Gardner, both citizens of Alabama, brought this action against Paul Morrison, a resident of Georgia, seeking damages for injuries arising out of an automobile collision occurring on Georgia State Highway 114 in Chattooga County, Georgia. The jury in this diversity case returned a verdict for the defendant. The only contention of error asserted upon this appeal by the appellants is that the District Court committed reversible error in instructing the jury on comparative negligence when there was no evidence presented on the trial of the case that the appellants (plaintiffs below) were in any way negligent.

The record shows that on June 23, 1967, during daylight hours, the Gardners were motoring north on Georgia Highway 114 about 3.4 miles south of the town limits of Lyerly, in Chattooga County, Georgia. The highway was hard-surfaced and was 24 feet wide, with 6-foot shoulders on each side, and at the point of collision was straight. Plaintiff R. J. Gardner was operating his vehicle and his wife was still sitting beside him, with their children occupying the rear seat of the automobile. At the same time, Paul Morrison was driving a pick-up truck south on the highway. The view between the vehicles as

they approached the point of collision was unobstructed, and the testimony indicated that each driver saw the vehicle of the other as they approached the point of collision. Both the Gardner automobile and the Morrison pick-up truck were on the proper side of the highway, and there was no other traffic between them or close behind. Neither driver noticed anything unusual about the movements of the vehicle being driven by the other. As the Gardner automobile approached within 175 feet of the Reed driveway, the pick-up truck suddenly and without warning turned across the Gardners' (northbound) lane of travel and the collision occurred in the northbound traffic lane.

The defense of Morrison, who was charged by the Georgia State Patrol with driving under the influence of intoxicants, was that he "suddenly blacked out" and never remembered turning into the driveway located on the opposite side of the highway.

A perusal of the record indicates that no negligent act was proved against R. J. Gardner, the driver of the northbound automobile. Both plaintiffs testified that the speed of their automobile was "around 55 miles per hour". Trooper Broom, of the Georgia State Highway Patrol, from his measurement of the skid marks at the scene, the examination of the damage to the vehicles, the highway, and other relevant factors, concluded that the speed of the Gardner vehicle was 60 miles per hour.[1] Defendant Morrison did not testify as to the speed of the Gardner vehicle, but said that he "did not see anything wrong with the action of the Gardner car" * * * "nothing that attracted his attention to it other than that it was traveling north on that highway * * *".

Besides the excessive speed of plaintiffs charged by defendant, on which there was no evidence presented, the only other contention of negligence charged against Gardner by defendant is that "plaintiff could have avoided defendant's vehicle by turning on to the southbound traffic lane just vacated by defendant vehicle".

The plaintiff's failure to do this was the subject matter of the court's instruction to the jury, to which exception was made, and was also the subject of the trial court's opinion in overruling the motion for a new trial.

In addition to the evidence previously related, the evidence which bears on this question is: Defendant Morrison testified that his destination was the Reed home, and that " * * * I was slowing down, going to stop and let him (the driver of the approaching vehicle) come by, and I don't know what happened, I just went blank. I don't know whether I fainted, or blacked out, or what happened".

Defendant gave this further testimony:

"Question: Do you recall turning your vehicle across the line?

"Answer: I never, I never turned across, not knowingly.

" * * * just before I got down there (to the Reed driveway), well, I stuck out my hand. * * *

" * * * I had my hand out, and this car was coming down the road, and I was going to wait until he passed and all of a sudden just went blank."

"I didn't turn to the left."

Plaintiff R. J. Gardner testified that " * * * as we approached the point which I now know is Mrs. Reed's driveway, why here was a truck coming on, he was on his side of the road, and then abruptly, without any signal, any warning whatsoever, why he cut in front of me". Gardner tried to avoid the truck by braking and pulling to the right. He was about 175 feet from the truck when he knew it was crossing into his lane.

---

1. Georgia Code 68–1626(b) (2) provides that the maximum speed limit for ve-

hicles at the time and place of the impact is 60 miles per hour.

Gardner then " * * * tried to get out of the way".

Mrs. Gardner testified that "I saw the truck coming over the hill, coming toward us. He was on his side of the road, and there was no reason for us to slow up, or think anything about anything happening other than we would just pass each other, until we got right to that driveway you all have been describing as Mrs. Reed's driveway, and he turned right in front of us and was so close on us, we were so close on him, that we hit practically head-on".

Trooper Broom measured skid marks of 147 feet 7 inches from the Gardner vehicle, that State Trooper having testified (in estimating the speed of the Gardner vehicle) that he had taken into consideration the fact:

(a) That the Gardner vehicle was impeded prior to completion of its skidmarks; and

(b) Driver reaction time—said to be 66 feet, would mean that the State Trooper expertise placed the Gardner vehicle 213 feet (147 feet skid marks plus 66 feet reaction time) from the Morrison truck when it turned across the road in front of him. (This estimate is only 38 feet more than Gardner's estimate).

Trooper Broom placed the point of impact on the east edge of the road in the northbound traffic lane at the north edge of the Reed driveway. Jewel Reed testified that defendant Morrison cut to his left across the center of the road to come into her driveway, and that is when the collision occurred.

■ There being no testimony from any witness of excessive speed on behalf of the Gardners, the other charge of negligence was the failure of Gardner to swerve into the southbound lane after he (Gardner) became aware of Morrison's maneuver onto the opposite lane. We think this contention is manifestly fallacious. Even if Gardner had time to swerve his automobile into the Morrison lane after he became aware of his danger, to have done so under the existing conditions might have been equally or more dangerous than to cut onto the right shoulder as he attempted to do. The plaintiff's decision, made under the stress of an emergency situation, not created by any act of negligence on his own part, must be evaluated in the light of that situation. The evidence, even viewed in retrospect, would not support a finding that the plaintiff acted in a negligent manner in any respect.

■ It is a settled law of Georgia that it is error for a trial court to instruct a jury on comparative negligence where there is no evidence of such negligence on the part of the plaintiff, even though the issue of same may have been raised in the defendant's pleadings. Beadles v. Bowen, 106 Ga.App. 34, 36, 126 S.E.2d 254; Jacks v. Lambert, 111 Ga.App. 763(1), 143 S.E.2d 215; Massey v. Stephens, 113 Ga.App. 10, 147 S.E.2d 53; Taylor v. Haygood, 113 Ga. App. 30, 147 S.E.2d 48.

■ If we assume that since this was a diversity case, tried in federal court, the question of what matters are to be submitted to a jury is governed by federal law, we still reach the same result as to the impropriety of the instructions herein questioned. See Jackson v. Southern Railway Company, 317 F.2d 532 (5 Cir. 1963), where this court ruled on the identical question with which we are here concerned.

■ Here under the circumstances present, where the giving of this instruction permitted the jury to find the plaintiff guilty of comparative negligence, the giving of the instruction was prejudicial error. Fillipon v. Albion Vein Slate Co., 250 U.S. 76, 82, 39 S. Ct. 435, 63 L.Ed. 853; Standard Accident Insurance Company v. Terrell, 5 Cir., 1950, 180 F.2d 1, 4; Gleason v. Rhodes Center Pharmacy, 94 Ga.App. 439, 95 S.E.2d 293.

Accordingly, the judgment is reversed and the cause is remanded for a new trial.

Reversed and remanded.

**658**

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

Chambers, Circuit Judge, dissented and filed opinion.