920 F.2d 933
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Cary PEARSON, Petitioner-Appellee,
v.
Terry L. MORRIS, Respondent-Appellant,
 No. 89-3855.
 United States Court of Appeals, Sixth Circuit.
 Dec. 12, 1990.
 
 Before MILBURN, BOGGS and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner-appellee filed a pro se petition for habeas corpus relief arising out of a state conviction for felonious assault with a firearm, claiming his trial was prejudiced by the fact that he was not personally present at an in-chambers conference in which defense counsel, the prosecutor, and the judge responded to three messages simultaneously sent by the jury during their deliberations. The district judge granted the petition, reasoning that appellee was entitled to be personally present at the conference because his absence may have prejudiced his case. For the reasons stated below, we REVERSE the judgment of the district court.
 
 A. FACTS
 
 2
 Mr. Pearson was convicted in 1985 of felonious assault arising out of his shooting of Melvin Frazier. Frazier, who was paralyzed by the incident, testified and identified Mr. Pearson as his assailant. Frazier identified the gun as a "long .38" (.38 caliber) with air smoked barrels. Mose Pickens, a mutual friend of both Frazier and Mr. Pearson, also testified and identified Mr. Pearson as Frazier's assailant. The other evidence introduced by the state was the hospital record of Frazier which indicated that Frazier was shot with a .32 caliber gun. The only defense witness was Walter Workman, who testified that there were fifteen to twenty people present at the time of the shooting and that he did not see Mr. Pearson among that group. The proposed alibi testimony of Mr. Pearson's girlfriend was aborted when it became evident that no notice of alibi testimony had been filed. Mr. Pearson exercised his constitutional right not to testify at trial and the judge gave an appropriate instruction.
 
 
 3
 After the jury commenced its deliberations, it simultaneously sent three separate pieces of paper to the trial court, which form the basis of this appeal. The messages were as follows:
 
 
 4
 [Message No. 1 ]
 
 
 5
 The jury would like to know if Melvin Frazer [sic] used the word 38 Revolver or type of gun. Was caliber used in testamony [sic]. Foreman
 
 Orlando Murphy
 
 6
 [Message No. 2 ]
 
 
 7
 We question, if a juror cannot make a decision because the defendant did not testify.
 
 Foreman
 Orlando Murphy
 
 8
 [Message No. 3 ]
 
 
 9
 Can we have the alternate juror to replace.
 
 
 10
 As revealed in a subsequent evidentiary hearing, the court consulted with the prosecutor and defense counsel in chambers about the questions, treating messages # 2 and # 3 as a single question. Thereafter, the court stapled message # 1 to a sheet of paper and typed above the stapled message the following:
 
 
 11
 The jury will have to use its collective memory in recalling what the witnesses testified to.
 
 
 12
 The court stapled messages # 2 and # 3 to a separate sheet of paper and typed above the stapled messages the following:
 
 Dear Jurors:
 
 13
 An alternate juror cannot substitute for a regular juror after deliberation has begun.
 
 
 14
 Mr. Pearson, through different counsel, appealed the decision of the trial court to the Ohio Court of Appeals. The court supplemented the record in October 1986 with the sworn testimony of the trial judge that he had conferred with both the prosecuting and defense attorneys prior to answering the questions posed by the jury foreman, and that they had all agreed upon the responses which were given.[1] The court held that, although it was error for Mr. Pearson not to be present during the in-chambers conference, the error was harmless beyond a reasonable doubt. For the same reason, the court held that Mr. Pearson failed to demonstrate prejudice under the test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984), for determining ineffective assistance of counsel.
 
 
 15
 Through the same appellate counsel, Mr. Pearson appealed to the Supreme Court of Ohio. On March 25, 1987, the Supreme Court sua sponte dismissed the appeal "for the reason that no substantial constitutional question exists therein." Appellee then filed a pro se petition for a writ of habeas corpus alleging he was "deprived of his sixth amendment rights to be present at all critical stages of his state court trial and with the assistance of counsel" when "the trial judge gave the trial jury additional instructions without petitioner and/or his defense counsel being present."
 
 
 16
 On November 3, 1987, the magistrate filed a report with the district court in which he recommended denial of the petition. After reviewing Mr. Pearson's objections to the magistrate's report, the district court remanded the case for an evidentiary hearing to determine whether Mr. Pearson's defense counsel was present during the in-chambers conference concerning the appropriate response to the jury's notes. Following an evidentiary hearing in which he determined that Mr. Pearson's defense counsel was present at the in-chambers conference, the magistrate filed a second report again recommending denial of the petition on the basis that the trial judge had committed no constitutional error.
 
 
 17
 On August 14, 1989, the district judge filed a memorandum opinion granting Mr. Pearson's application for a writ of habeas corpus, reasoning that the in-chambers conference was a critical stage of the proceedings at which the defendant was entitled to be personally present due to "the substantive nature of the question regarding the defendant's silence coupled with the fact that the defendant has a right to request a supplemental instruction regarding his silence."
 
 B. ANALYSIS
 
 18
 We have been unable to discover any authority for the proposition that a defendant's personal presence, in addition to the presence of his counsel, is constitutionally required any time a trial court receives and responds to jury messages relating to the deliberative process. The key Supreme Court decision addressing this issue on similar facts, Rogers v. United States, 422 U.S. 35, 95 S.Ct. 2091 (1975), merely held that it is reversible error for a trial judge to respond to jury communications without the presence of either the defendant or his counsel. In Rogers the jury sent a note to the trial judge inquiring whether the court would accept a verdict of "Guilty as charged with extreme mercy of the Court." Without notifying the defendant or his counsel, the trial judge instructed the marshall who had delivered the note to advise the jury that the court's answer was in the affirmative. The jury returned a guilty verdict five minutes later, recommending "extreme mercy."
 
 
 19
 In reversing the conviction, the Rogers Court cited Fillippon v. Albion Vein Slate Co., 250 U.S. 76, 81, 39 S.Ct. 435 (1919), a civil case in which the court observed that "the orderly conduct of a trial by jury, essential to the proper protection of the right to be heard, entitles the parties who attend for the purpose to be present in person or by counsel at all proceedings from the time the jury is impaneled until it is discharged after rendering the verdict." (Emphasis supplied). The Rogers Court also relied upon Shields v. United States, 273 U.S. 583, 47 S.Ct. 478 (1927), a case in which the Supreme Court reversed a conviction where the jury reported to the trial court that they could only agree on a verdict as to certain defendants, and the trial judge erroneously responded, in the absence of the defendant or his counsel, that the jury would have to find whether the other defendants were guilty as well.
 
 
 20
 Although not precisely on point, in Rushen v. Spain, 464 U.S. 114, 104 S.Ct. 453 (1983), the Supreme Court held that an ex parte communication between the trial judge and a juror, in which the juror told the judge of her personal acquaintance with a crime that was unrelated to the crimes at issue in the trial, was harmless error. The Supreme Court explained: "When an ex parte communication relates to some aspect of the trial, the trial judge generally should disclose the communication to counsel for all parties. The prejudicial effect of a failure to do so, however, can normally be determined by a post-trial hearing." (Emphasis supplied). 464 U.S. at 119. These Supreme Court precedents simply do not stand for the proposition that a defendant's personal presence, in addition to the presence of his counsel, is constitutionally mandated in all cases in which a trial judge responds to jury messages.
 
 
 21
 We have never held in this Circuit that the defendant's personal presence is constitutionally required during every type of in-chambers discussion. In United States v. Bustamante, 805 F.2d 201, 203 (6th Cir.1986), we held it was error (although harmless) for the trial judge to respond to the jury's question "other than in open court and in the presence of counsel for both sides." (Emphasis supplied). The question from the jury was whether, if they arrived at a unanimous verdict of guilty on any one of four items under Count One, they had to reach a unanimous decision on the remaining three items. The judge responded in writing by stating: "the answer is no. See page 19, paragraph 2, of the instructions." In United States v. Brown, 571 F.2d 980, 987 (6th Cir.1978), we held that a defendant had no constitutional right to be present at an in-chambers conference concerning the dismissal of a juror because it was "not a stage of the trial when the absence of the defendant would frustrate the fairness of the trial so long as counsel for the defendant is present." These cases are distinguishable from Evans v. United States, 284 F.2d 393, 395 (6th Cir.1960), in which we held that the defendant was constitutionally required to be present when additional instructions were given to the jury because the judge had read aloud additional instructions in open court which "did not relate to trivial, insubstantial matters, but involved vital issues in the case." Evans was not a case in which the judge responded in writing to jury messages expressing concern with the mechanics of the deliberative process, such as length of deliberation, problems with the collective memory, or disagreement among jurors.
 
 
 22
 We find the test adopted by the Seventh Circuit in United States v. Silverstein, 732 F.2d 1338 (7th Cir.1984), cert. denied, 469 U.S. 1111 (1985), to be useful in determining when a defendant is constitutionally entitled to be present at an in-chambers discussion regarding a response to jury messages. In Silverstein, the trial judge consulted with defense counsel prior to answering the jury's request for a transcript of certain testimony (which did not exist) with a note which stated: "Sorry, it is not possible to furnish the requested testimony. Continue with your deliberations." The test utilized by the Seventh Circuit in determining whether defendant was entitled to be present when the reply was formulated was whether it was "the sort of question on which counsel would be likely to consult their clients, or on which the clients, if consulted, would be likely to have an answer that would sway the judge." 732 F.2d at 1348. The court then concluded that the defendant's presence was not required and that, even though the reply was potentially misleading, the error was harmless.
 
 
 23
 In the instant case, we similarly conclude that the three messages sent by the jury did not pose the sorts of questions on which defense counsel would be likely to consult their clients or on which clients would be able to contribute in formulating a response. The first message merely conveyed that the jury was experiencing difficulty in reconciling apparently conflicting testimony, and the only appropriate response was the one given by the judge--for the jury to "use its collective memory in recalling what the witnesses testified to." The second and third messages, read together as a single message, indicated that the jury sought to replace one juror who was reluctant to convict because he had not heard the defendant's side of the story. The messages, however, do not indicate a completely different proposition, that the jury was inclined to convict as a result of the defendant's refusal to testify. As such, the trial judge's response that "an alternate juror cannot substitute for a regular juror after deliberation has begun" was entirely correct. Thus, appellee was not constitutionally entitled to be present during the in-chambers conference which determined the responses to the jurors' messages. Because appellee has failed to establish that the trial judge's responses to the questions posed by the jury were prejudicial or denied him his right to a fair trial, the district court's grant of appellee's writ of habeas corpus is REVERSED.
 
 
 
 [1]
 According to the evidentiary record, after he finished typing the answers, the trial judge showed them to the prosecutor and defense attorney, and it was agreed that the responses could be made without bringing the jury, or Mr. Pearson, back into the courtroom. The trial judge also testified that it has been his practice to tell defense counsel to obtain permission from the defendant before any communication with the jury is made