714

**ROSENBERG v. HANO et al.**

**No. 20700.**

District Court, E. D. Pennsylvania.

June 26, 1940.

David Kanner, of Philadelphia, Pa., for plaintiff.

Henry L. Schimpf, Jr., of Carr & Krauss, of Philadelphia, Pa., for defendants.

KALODNER, District Judge.

Plaintiff, a Philadelphia lawyer, brought this suit under the Securities Exchange Act of 1934, June 6, 1934, c. 404, Sec. 1 et seq., 48 Stat. 881, 15 U.S.C.A. § 78a et seq.

The original complaint was filed July 1, 1938. An amended statement of claim was filed October 11, 1938, and a second amended statement of claim (the final statement) was filed December 19, 1938.

In the latter statement, the plaintiff alleged that he had purchased from the defendants—members of the N. Y. Stock Exchange, doing business in Philadelphia, Pennsylvania—100 shares of stock of the Schenley Distillers Corporation on November 13, 1936, at a price of $54.75 per share, plus commissions. Plaintiff further alleged that he had purchased this stock in reliance (1) upon exhibition to him by Berger, a customer's man employed by the defendants, of a telegram from one Reitman of New York, publisher of a stock market information service, which read: "Schenley for 15 point advance"; (2) upon an accompanying statement to the plaintiff by Geis, one of the defendants, that "This is confidential information. Get in on this deal for a 15 point advance in a day or so"; (3) upon the further assurance by Berger, the customer's man, that Geis's statement was correct, and that the defendants, Hano and Company "had made a deal to that effect, whereby said stock would advance in price. * * * that Harold E. Reitman, the defendants, and other undisclosed persons were conducting market operations which would cause the price of Schenley stocks to advance from $54.75 per share, at which price they were then quoted upon the N. Y. Stock Exchange, to $69.75, as a result of said operations."

The complaint further alleged that prior to November 13, 1936—the date of the purchase—that Schenley stock "had been moving very slowly, rarely showing a greater activity than 100 to 200 shares sold

per day within a period of two months prior to the purchase" and that subsequent to the plaintiff's purchase "within the same day and within the next two days immediately following there was an immense activity shown in the number of sales and transactions of the stock. * * *"

The complaint further alleged that Schenley never went up $15 per share, and that instead it went down; that the price was $17.75 per share on the day suit was brought.

A further allegation of the complaint was that it was not until February, 1938, that the plaintiff learned through Berger, the customer's man, that the November, 1936, transaction was a "manipulation" by a deal between Reitman and the defendants.

The case came to trial November 2, 1939. At the conclusion of the plaintiff's testimony, the defendants moved for a directed verdict, and the motion was granted by the Court on the ground that the plaintiff had not made out a case. Plaintiff thereupon moved for a new trial.

The provisions of the Securities Exchange Act of 1934, supra, relevant to this issue are as follows:

Section 9, 15 U.S.C.A. § 78i. "(a) It shall be unlawful for any person, directly or indirectly, * * *.

"(2) To effect, alone or with one or more other persons, a series of transactions in any security registered on a national securities exchange creating actual or apparent active trading in such security or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others. * * *

"(4) If a dealer or broker, or other person selling or offering for sale or purchasing or offering to purchase the security, to make, regarding any security registered on a national securities exchange, for the purpose of inducing the purchase or sale of such security, any statement which was at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, and which he knew or had reasonable ground to believe was so false or misleading. * * *

"(e) Any person who willfully participates in any act or transaction in violation of subsection (a), * * * shall be liable to any person who shall purchase * * * [for] damages sustained as a result of any such act or transaction. * * * No action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation."

The allegation that a representation was made that the Schenley stock purchased from the defendants would rise 15 points within the next few days after purchase could not support a verdict for the plaintiff for the following reasons: In the first place, it is obviously a statement of an opinion as to something which might happen in future. In the second place, even if it be conceded that this is a representation and false in fact, the plaintiff would be barred from bringing this action by the express provision of the Securities Exchange Act of 1934 which provides that "no action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation * * *."

It is obvious that the plaintiff would have recognized that the purported representation was untrue within "a day or two" after he purchased the stock. Indeed, the plaintiff's final pleading avers in paragraph 11 "That the aforementioned stock instead of rising as represented to your plaintiff * * * was and has been selling at lower prices than which the plaintiff paid for same, * * *". Suit was not brought in this case until July 1, 1938.

The allegation that the defendants had "made a deal" to cause the price of Schenley stock to advance 15 points could not form the basis for a verdict for plaintiff because if the plaintiff relies on Section 9(a) (2) of the above-quoted provision his case must fail inasmuch as the apparent proof at the trial was that there was no such manipulation. If he relies on Section 9(a) (4), in effect that there was a false representation of such a manipulation (an assertion that cannot be made with altogether good grace by a lawyer plaintiff), his cause must likewise fall because he failed to plead this. The testimony on the latter point was admitted over the objection of the defendants and the plaintiff did not move to amend his statement of claim. See Rules of Civil Procedure, rule

15(b), 28 U.S.C.A. following section 723c. It cannot be asserted that the pleading was in this respect inadvertent. Three separate statements of claim have been filed, each one of which has been sworn to and signed by the plaintiff who is an attorney. We must presume that both he and his counsel knew what they were saying and doing.

The statement of claim and the plaintiff's own evidence at the trial present an anomalous situation. The plaintiff seeks to recover under the Securities Exchange Act of 1934—an Act designed, among other things, to put an end to manipulation of prices of securities. In its essence, the plaintiff's complaint is that the defendants failed to carry out their representation that there would be a manipulation of prices to the benefit of the plaintiff; that, in other words, the defendants failed to carry out an undertaking to do a thing made illegal by the very Act of Congress under which the plaintiff seeks relief.

For the reasons stated, the motion for a new trial is denied.