David SMITH, Appellant,

v.

ELLERMAN LINES, Ltd.

No. 12164.

United States Court of Appeals
Third Circuit.

Argued June 4, 1957.

Decided Aug. 19, 1957.

As Amended Oct. 9, 1957.

William M. Alper, Philadelphia, Pa. (Freedman, Landy and Lorry, Philadelphia, Pa., on the brief), for appellant.

Perry S. Bechtle, Philadelphia, Pa. (Thomas E. Comber, Jr., Philadelphia, Pa., Pepper, Bodine, Frick, Scheetz & Hamilton, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

Was "fundamental error", reversible per se, committed by the trial judge when, in the presence of both counsel and the jury, he answered the latter's written request for further instructions without reading it verbatim to counsel?

Has the plaintiff waived his right to consideration of this question by reason of his failure to object at the time and/or

to assign it as a reason for a new trial as required by the Federal Rules of Civil Procedure [28 U.S.C.]?

Did the trial judge err, when in his instructions to the jury, he limited the issue of proximate cause to the theory asserted by the plaintiff in his pleadings and his testimony at the trial?

These issues are presented on this appeal from the Order of the United States District Court for the Eastern District of Pennsylvania denying plaintiff's motion for a new trial and from the Judgment of that Court entered against him in accordance with a jury verdict in an action for personal injuries.

The facts may be summarized as follows:

The plaintiff, David Smith, a longshoreman employed by the Atlantic & Gulf Stevedoring Company, brought suit against the defendant Ellerman Lines, Ltd., owner and operator of the "S. S. City of Chester" to recover damages for personal injuries sustained on October 22, 1952, by reason of the unseaworthiness of the vessel and its negligence.

On the day of his injury plaintiff was one of a crew of four longshoremen working on a railroad gondola car on the dock at which the "S. S. City of Chester" was moored. His job was to help in placing straps around heavy crates in the gondola car and then to secure them to a cargo hook attached to and operated by the vessel's winches. Once hooked-on, the crates were hoisted aboard the vessel and unloaded into one of its holds.

In his pleadings, the plaintiff asserted that by reason of the unseaworthy condition of the vessel's winches or their negligent operation, he was struck by one of the crates and "knocked" by it from the gondola car to the railroad tracks below. His testimony, and that which he adduced at the trial was to the same effect.

Both in its pleadings and at the trial defendant denied that the vessel's winches were unseaworthy or negligently operated and asserted that plaintiff's injuries were not due in any way to their operation. It adduced testimony that the plaintiff fell while walking along the six-inch ledge of the gondola car.

The trial judge instructed the jury that if the winches were not working properly either by reason of unseaworthiness or negligence, and that was the proximate cause of plaintiff's injury, he was entitled to recover; that the "simple question" was whether the plaintiff was "knocked-off" the gondola car by the crate due to the improper functioning of the winches or whether he fell off the car without being struck; "If the former, he would be entitled to a verdict; if the latter, he would not . . ."

Before the jury retired the trial judge asked counsel "to call my attention to anything that you think I have omitted or anything that you think I should not have said, so that if I have been in error I will have an opportunity to correct it." To that request plaintiff's counsel said "I have nothing to add."

After the jury had deliberated for one hour and fifteen minutes it returned to the court room with a written request for instructions. The following colloquy then ensued, counsel for both sides being present:

"The Court: Members of the jury, I have a written request here for instructions. Part of that request states: 'We feel the man fell and did not get hit by the draft.'

"Are you all agreed that that is the fact?

"A Juror: Not entirely. The majority are.

"The Court: Well, then, you will have to go back and determine that question.

"And I should say to you that this man is not entitled to any compensation, regardless of who paid him, if he fell and did not get hit by the draft. You have nothing to do with the question of who paid his wages; you have no right to give him any verdict unless you find that he was hit by the draft through the neg-

ligence of the defendant in the case. So just forget all about the question of giving him compensation. You have nothing to do with that. The law takes care of that situation. I am not saying that he won't get any compensation, but that is for the law, it is not for the court and not for the jury. The only thing for you to decide is whether he has made out his case, that he was injured through the negligence of defendant. If he hasn't made that case out your verdict should be for the defendant, and if he has made it out, then you have the rule of damages.

"Mr. Kuby [plaintiff's counsel]: If Your Honor please, may we see you at side bar before you send the jury out?

(At side bar:

"Mr. Kuby: If Your Honor please, though much has been said about the case in connection with the actual hitting, I think it is still a question of liability if this man backed off that car in an effort to get away from the swinging draft.

"The Court: Oh, he didn't say so. He says he was hit.

"Mr. Bechtle [defendant's counsel]: There is no evidence as to that.

"The Court: I mean, I can't build up a theory for him. The only theory that has ever been advanced was that he was hit by the draft. The case has been tried on that basis from beginning to end. *It was never suggested at any time, in argument or otherwise that he stepped back to avoid the draft. He didn't so testify and counsel hasn't so argued.* I think the instructions are correct as they are. (Emphasis supplied.)

\*  \*  \*  \*  \*  \*

"Mr. Kuby: May I ask Your Honor to charge the jury further that the verdict must be unanimous?

"The Court: Oh, yes.)

"The Court: I think you members of the jury all understand that your verdict must be unanimous. I mean, it is not a question of the majority rule. If you can't all agree, then there is no verdict. You will have to have a unanimous verdict."

The entire incident, according to the notes of testimony, took two minutes. The jury then retired and in about three-quarters of an hour returned a verdict for the defendant. Judgment was entered on that verdict on July 24, 1956. On July 30, 1956, plaintiff filed a motion for a new trial, asserting therein that the trial judge had erred (1) "in instructing the jury that it was necessary for them to find that the crate actually struck the plaintiff before they could render a verdict for plaintiff"; and (2) "in refusing to instruct the jury that if they found that the plaintiff was forced off the railroad car by the movement of the crate without being struck by it, then they could render a verdict for the plaintiff." The motion further stated that the instructions given by the trial judge "were erroneous in that they were highly prejudicial to the plaintiff" and "plaintiff reserves the privilege to add further reasons for new trial upon the receipt of the transcipt of the notes of testimony." The transcript was filed on August 24, 1956, more than three weeks later, but plaintiff failed to add to his original motion. On December 17, 1956, his motion for a new trial was argued and on the same day the trial judge entered an Order denying it. It is conceded that at the argument on the motion plaintiff made no reference to the incident relating to the jury's communication.

In his "Statement of Questions Involved" in the brief which he filed with this Court, the plaintiff for the first time raised the issue of "fundamental error" by reason of "the trial judge's failure to disclose the entire written question or questions submitted by the jury", and asserted that "due process requires that counsel must be acquainted with the full substance of the communication between jury and judge."

**764**

Defendant disputes the contention of "fundamental error" and urges that plaintiff has waived the right to argue it on this appeal because of his failure to direct the trial court's attention to his now alleged error in compliance with Rules 46[1] and 51[2] of the Federal Rules of Civil Procedure and his further failure to timely assign it as a reason for a new trial as required by Rule 59.[3]

As to Rule 51, defendant cites Stilwell v. Hertz Drivurself Stations, Inc., 3 Cir., 1949, 174 F.2d 714, 715, in which we re-affirmed our earlier holding in Alcaro v. Jean Jordeau, 3 Cir., 1943, 138 F.2d 767, 771, that "Rule 51 is designed to preclude counsel from assigning for error on appeal matter at trial which he did not fairly and timely call to the attention of the trial court."

In discussing Rule 51 and its counterpart Rule 30 of the Federal Rules of Criminal Procedure [18 U.S.C.A.] it was said in United States v. Vasen, 7 Cir., 1955, 222 F.2d 3, 5:

"* * * common fairness requires that before it can be successfully contended on appeal that the trial court has erred, that court must have been given an opportunity to rectify any inadvertent comment, ruling or instruction."

Plaintiff seeks to avoid the impact of the Rules and the decisions enforcing them by invoking the "fundamental error" doctrine which declares that "Orderly rules of procedure do not require sacrifice of the rules of fundamental justice."[4]

That being so we are compelled to first decide whether "fundamental error" was committed by the trial judge because he failed to read verbatim the jury's com-

1. Rule 46 provides: "Exceptions Unnecessary. Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him."

2. Rule 51 provides: "Instructions to Jury: Objection. At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

3. Rule 59 provides in part: "New Trials; Amendment of Judgments

"(a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, or any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

"(b) Time for Motion. A motion for a new trial shall be served not later than 10 days after the entry of the judgment. As amended Dec. 27, 1946, effective March 19, 1948."

4. Hormel v. Helvering, 1941, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037, cited with approval in Cahill v. New York, N. H. and H. R. Co., 1956, 351 U.S. 183, 188, 76 S.Ct. 758, 100 L. Ed. 1075. See also "Raising New Issues on Appeal" 64 Harv.Law Review, 652, 654–655 (1951), and Thorp v. American Aviation & General Insurance Co., 3 Cir., 1954, 212 F.2d 821, 825.

munication to counsel or to submit it to them for their perusal.

Plaintiff's counsel places heavy reliance on our holding in Arrington v. Robertson, 3 Cir., 1940, 114 F.2d 821, 822, 823. There the question posed was "whether it was reversible error for the trial judge, *in the absence of counsel for the parties and without notice to them, to send instructions in writing to the jury*, pursuant to an inquiry by them, after they had retired from the court room and while they were in the jury room deliberating upon their verdict." (Emphasis supplied.) We held that "The action of the trial judge in the present case in sending instructions to the jury from his chambers in the absence of the defendant or his counsel and without giving them notice and an opportunity to be present amounted to a denial of due process of law."

Again, in Snyder v. Lehigh Valley Railroad, 3 Cir., 1957, 245 F.2d 112, we recently held that reversible error was committed by the trial judge when, without notice to counsel or their knowledge, in response to an inquiry from the jury, while they were considering their verdict in the jury room, he sent the jury supplementary oral instructions.

Our holding in both the Arrington and Snyder cases was in accord with the broad rule enunciated in Fillippon v. Albion Vein Slate Co., 1919, 250 U.S. 76, at page 81, 39 S.Ct. 435, at page 436, 63 L.Ed. 853. It was there said:

"We entertain no doubt that the orderly conduct of a trial by jury, essential to the proper protection of the right to be heard, entitles the parties who attend for the purpose to be present in person or by counsel at all proceedings from the time the jury is impaneled until it is discharged after rendering the verdict. *Where a jury has retired to consider of their verdict and supplementary instructions are required, either because asked for by the jury or for other reasons, they ought to be given* *either in the presence of counsel or after notice and an opportunity to be present; and written instructions ought not to be sent to the jury without notice to counsel and an opportunity to object.* Under ordinary circumstances, and wherever practicable, the jury ought to be recalled to the courtroom, where counsel are entitled to anticipate, and bound to presume, in absence of notice to the contrary, that all proceedings in the trial will be had. *In this case, the trial court erred in giving a supplementary instruction to the jury in the absence of the parties and without affording them an opportunity either to be present or to make timely objection to the instruction.*" (Emphasis supplied.)

We observed in both Arrington and Snyder that the Supreme Court's decision in the Fillippon case " * * * appears to have been rested primarily on the manner in which the instruction was given"; namely, absence of counsel and denial of an opportunity for them to be heard with respect to the supplementary instructions to the jury and "to make timely objection to the instruction."

In the instant case the trial judge fully complied with the principles enunciated in the cases cited. He received, considered and answered the jury's written communication in open court in the presence of both counsel and with full opportunity to the latter "to make timely objection to the instruction[s]." The official court stenographer was present and fully reported the proceedings—including the colloquy between judge and counsel at side bar. No objection was made by either counsel to the trial judge's failure to read aloud verbatim the jury's communication nor did they request him to do so. That full opportunity was given to counsel to be heard is evidenced by the fact that plaintiff's counsel made two requests for additional instructions, one that the jury's verdict must be unanimous, the second relating to his belated "new" theory as to proximate cause.

The first was granted; the second denied.

In the light of the record we are of the opinion that there was no denial of due process of law here and that the plaintiff's contention of "fundamental error" is entirely without merit.

■ There remains for disposition the plaintiff's contention that the trial judge erred in denying his requested supplementary instruction, (at the time of the jury communication incident) that " * * * it is still a question of liability if this man [plaintiff] backed off that car in an effort to get away from the swinging draft." That request was made in view of the statement in the jury's communication (which was read verbatim to counsel by the trial judge) "We feel the man fell and did not get hit by the draft" and the ensuing instruction that the plaintiff was not entitled to a verdict " * * * if he fell and was not hit by the draft."

However valid the plaintiff's legal theory [5] may be that he could recover if his fall from the railroad car was due to his "normal response to fear" of impending injury from the defectively operated draft (assuming such defective operation), in the absence of any evidence to support such theory the trial judge would have erred had he instructed with respect to it.

■ It is well-settled that " * * * one may not assign a theory which is unsupported by evidence" and which is " * * * predicated upon * * * pure speculation", Decker v. Korth, 10 Cir., 1955, 219 F.2d 732, 739 and that it is error to instruct the jury with respect to an issue "not tendered by the pleadings or raised by the proof * * * during the trial." Black, Sivalls & Bryson v. Shondell, 8 Cir., 1949, 174 F.2d 587, 592; McCarthy v. Pennsylvania

Railroad Co., 7 Cir., 1946, 156 F.2d 877, certiorari denied, 1947, 329 U.S. 812, 67 S.Ct. 635, 91 L.Ed. 693.[6]

The trial judge succinctly summarized the situation, when, in denying the plaintiff's requested instruction, he said: "The only theory that has ever been advanced was that he was hit by the draft. The case has been tried on that basis from beginning to end. It was never suggested at any time, in argument or otherwise, that he stepped back to avoid the draft. He didn't so testify and counsel hasn't so argued."

The statement that plaintiff "didn't so testify" is amply demonstrated by the trial transcript.

On direct examination plaintiff was questioned as follows by Mr. Kuby, his counsel (p. 94 N.T.):

"Q. Do you remember the case striking you? A. Yes, sir."

And, again, at p. 95 N.T. plaintiff testified:

" * * * I was knocked off the car."

He adhered to this contention that he was "hit" on cross-examination as demonstrated by the following excerpt from the testimony (p. 112 N.T.):

"By Mr. Bechtle [defendant's counsel] Q. Do you know, Mr. Smith, whether or not the case actually hit you? A. What?

"Q. I say, do you know whether the case actually hit you? A. Yes, the case hit me.

"Q. You know that for a fact? A. Yes.

"Q. Are you certain of that fact? A. The case had to hit me.

"Q. I mean do you know that the case actually hit you? A. Do I know? You say do I know it?

---

5. Based by the plaintiff on Restatement, Torts, Section 444 (1934) "Acts Done Under Impulsion of Emotional Disturbance", and Illustration 1, under this section.

6. Cited with approval by this Court in Yentzer v. Pennsylvania Railroad Company, 3 Cir., 1957, 239 F.2d 785, 790 and Colas v. Grzegorek, 7 Cir., 1953, 207 F. 2d 705, 710.

"By the Court: Q. Do you remember it? Let me put it this way, do you remember being hit with the case? A. I remember getting hit by something, Your Honor, but I couldn't tell what it was.

"Q. You remember getting hit by something? A. Yes, but I couldn't tell what it was."

Frank Fluellen, a winchman longshoreman, was one of three fellow workmen of the plaintiff who testified in his behalf. He was the only one who testified that he saw the accident—the others said that they had not.

Following are excerpts from his testimony:

"By Mr. Kuby [plaintiff's counsel] (p. 13 N.T.): Q. Were you in a position to see what was going on down on the railroad car? A. Well, yes, pretty good.

"Q. When the winch jumped, as you said, could you see what happened to the crate on the railroad car? A. Yes, she swung around.

"Q. What did you see it do with respect to David Smith? A. I see it hit him and he fell off the car.

\* \* \* \* \* \*

"By the Court (p. 14 N.T.): Q. What part of Smith did it hit? Did it hit him on the head or the back of—A. No, it must have hit him on the head.

"Q. Must have hit him on the head. It was pretty far above the car when it hit him, was it? A. Yes."

In addition to the foregoing the record even prior to the trial demonstrated that plaintiff premised his claim on his contention that he was "struck and knocked to the ground" by reason of the improper operation of the winches.

In his Complaint, plaintiff (para. 6) made general allegations of unseaworthiness and negligence with respect to the winches and alleged that as a result "he was caused to be *thrown* from a freight car down to the ground." (Emphasis supplied.)

Subsequently, defendant filed Interrogatories in paragraph 14 of which it asked plaintiff to:

"State in detail exactly how plaintiff is alleged to have sustained the injuries complained of, and in connection therewith state:

"(a) exactly where plaintiff was working at the time;

"(b) exactly what plaintiff was doing at the time;

"(c) what, if anything, came in contact with plaintiff, thus occasioning his fall."

In his "Answers to Defendant's Interrogatories" plaintiff stated in paragraph 14:

"Plaintiff was standing clear of draft, after having assisted in securing lifting rig around heavy crate, waiting for it to be lifted up, over and into the vessel. Suddenly some of the winch runners whipped tight and *plaintiff was struck and knocked to the ground.*

"(c) Boom runners and lifting equipment *knocked* plaintiff off car, causing him to fall to the tracks below where he struck his head and body." (Emphasis supplied.)

Applying the principles earlier stated we are of the opinion that on the record, pre-trial and trial, the trial judge would have erred had he given the instruction sought by the plaintiff.

It was only after the jury had returned for supplementary instructions in the course of which they disclosed that a majority of them were of the view that plaintiff " \* \* \* fell and did not get hit by the draft" that he for the first time advanced the theory that there could be liability even though he was not struck by the draft. That this was an after-thought is strikingly demonstrated by the fact that plaintiff did not object at the time of the trial judge's charge to his emphatic instructions that

the plaintiff was not entitled to recovery "if he fell off the car without being struck."

Rather oddly, plaintiff, as a basis for what may be described as his "apprehension" liability theory, here points to the fact that he admitted at the trial under cross-examination that in a pretrial oral examination he had repeatedly stated that he had not been struck by the draft, and further that there was certain inconsistent testimony on his part with reference to his being struck.

As to this it need only be said that plaintiff has failed to cite an iota of evidence at the trial that he was caused to fall by reason of apprehension of being struck or to avoid being struck by the draft.

For the reasons stated the Order of the District Court denying plaintiff's motion for a new trial and its Judgment entered against him in accordance with the jury's verdict will be affirmed.

BIGGS, Chief Judge (concurring).

I concur in all of the conclusions of the majority opinion, and also with its statements of fact and its reasoning except as to one issue. That single issue relates to the treatment by the trial judge of the request by the jury for further instructions. The majority opinion states that the trial judge failed to read *verbatim* the request of the jury to counsel for the parties. This statement is correct as far as it goes but the reality is, as appears from the quotation in the majority opinion, that the trial judge read only a "Part" of the request. The word "Part" was the term employed by the trial judge himself.

The first portion of the request which was read *verbatim* related to the conclusion expressed by some members of the jury that they "felt" the plaintiff "fell and did not get hit by the draft." That portion of the request which was not read obviously dealt, as appears from the subsequent instructions given by the trial judge to the jury, at least in part, with the irrelevant issue of "compensation." Whether any other issue was touched upon in the jury's request does not appear for, though the request was in writing, it has not been preserved and is not in the record.

Good practice, in my opinion, would require that such a request should be preserved and made a part of the record. It would then be possible for counsel in the court below and for the reviewing court to know precisely what the issues were which were presented by the request. But under the circumstances of the case at bar, I think it would not be just to hold that by not including the request in the record or informing counsel fully as to its contents the trial judge committed such fundamental error as to require reversal of the judgment. As has been said the trial judge stated in open court and in the presence of counsel for both parties that "Part" of the request was as he stated it to be. It would be futile to labor here the meaning of the word, *part*. When the trial judge made use of that word it should have been apparent to counsel, learned in the law and the English language, that the portion of the request read was not the whole of it. If counsel desired all of the request to be read to them and had so indicated there can be no doubt but that the trial judge would have read the whole of the request into the record or at least have exhibited the request to counsel.

Counsel for both parties had full opportunity to request information as to, or a reading of, the unread portion of the request and could have objected validly if the trial judge had refused to inform them. Neither counsel made any objection to what the trial judge did. In short counsel let the opportunity for further elucidation of the request go by at the critical time and counsel for the plaintiff, as the majority opinion states, raised this issue only on appeal. Under all the circumstances I could not hold that the plaintiff was denied due process

of law or that the jury system was jeopardized by the trial judge's omission. The Rules of Civil Procedure, 28 U.S.C., outline the course which counsel for the plaintiff should have followed at the trial if he had thought the issue was one of importance. I concur in the majority view that the judgment must be affirmed.