517 F.2d 45
 JOINER SYSTEMS, INC., a New Jersey Corporation, Appellant in
No. 74-1860,
v.
AVM CORPORATION, INC., a Delaware Corporation and AVM of
Maryland, a Maryland Corporation, Appellants in No. 74-1859.
 Nos. 74-1859, 74-1860.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 28, 1975.
Decided June 3, 1975.
 
 George T. Daggett, Sparta, N. J., for Joiner Systems, Inc.
 William J. Brennan, III, and Allen N. Grossman, Smith, Stratton, Wise & Heher, Princeton, N. J., for AVM Corp., Inc. and AVM of Md.
 Before VAN DUSEN, GIBBONS and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 VAN DUSEN, Circuit Judge.
 
 
 1
 The defendants, AVM Corporation, Inc. and AVM of Maryland (hereinafter collectively referred to as AVM), and the plaintiff, Joiner Systems, Inc. (hereinafter "Joiner"), respectively appeal and cross-appeal from a judgment entered by the district court on April 3, 1974, on a jury verdict in favor of the plaintiff. Motions by the defendants for a new trial, for judgment n. o. v., and for a remittitur were denied in an opinion and order of the district court filed June 4, 1974.
 
 
 2
 Our disposition of the appeals requires only an abbreviated statement of the facts. AVM was in the business of outfitting ships and manufacturing some of the necessary materials for such business. Joiner had a process for the manufacture of fire retardant panels used on ships. On October 29, 1970, Joiner and AVM entered into two agreements.[1] Under the first agreement[2] AVM agreed to use Joiner's process to manufacture the panels. The contract also provided that all of the panels manufactured by AVM would be sold to Joiner, and, conversely, all of Joiner's panel purchases would be from AVM. The second agreement, styled "an open contract to purchase fire retardant panels for five years," regulated the details of Joiner's purchase of panels from AVM. Although it did not set the quantity, it did attempt, with considerable obscurity, to set the price for a period of three years, leaving the price for the last two years "to be negotiated." There was no specific requirement either that Joiner place orders with AVM or that AVM purchase completed panels from Joiner.
 
 
 3
 Between the inception of the contract and December 20, 1971, AVM manufactured, sold to Joiner, and then repurchased 218,336 square feet of paneling. On December 20, 1971, AVM repudiated the agreements in a letter sent to Joiner. Thereafter, and until January of 1973, AVM manufactured 171,308 square feet of panel for its own account without first selling to Joiner, and then, if it chose, repurchasing, as the contracts required it to do.
 
 
 4
 On April 14, 1972, Joiner sued AVM in the New Jersey courts. AVM removed the case to the United States District Court for the District of New Jersey on June 16, 1972. The case went to trial before a jury, which awarded Joiner damages in the amount of $64,978.63. Judgment was entered on this verdict and, in the above-mentioned "Opinion and Order," the district court denied AVM's motions for a new trial, for judgment n. o. v., and for a remittitur. AVM timely appealed, and Joiner filed a cross-appeal.
 
 
 5
 One of AVM's charges of error in the trial is meritorious. At trial, Joiner introduced evidence that under the contracts it was entitled to a profit of $.20 per square foot on any paneling it purchased from and then resold to AVM. AVM, on the other hand, introduced evidence that Joiner actually made a profit of $12,950.17, or slightly less than $.06 per square foot, on the 218,336 square feet which Joiner had purchased from and resold to AVM prior to December 20, 1971. This $12,950.17 had been received by Joiner prior to trial. Contending that the issue was neither raised by the complaint nor tried with the consent of the parties, AVM asserts that it was error for the trial judge to charge the jury that they could grant damages not only on the 171,308 square feet manufactured after the December 20, 1971, repudiation, but also on the difference between $12,950.17 and any greater profit to which they found Joiner to be entitled on the 218,336 square feet manufactured prior to December 20, 1971. Although the court's charge is not completely clear on this issue,[3] there can be no doubt that the jury granted both pre- and post-repudiation damages.[4]
 
 
 6
 The jury's verdict will stand either if the issue of pre-repudiation damages was raised in the complaint or if it was tried with the consent of the parties. See Smith v. Ellerman Lines, Ltd., 247 F.2d 761, 766 (3d Cir. 1957); cf. Rosenberg v. Hano, 39 F.Supp. 714, 715-16 (E.D.Pa.1940), aff'd, 121 F.2d 818 (3d Cir. 1941). Joiner contends that its complaint stated a cause of action for breach of contract generally, and should therefore have been understood by AVM to encompass damages incurred both before and after repudiation. Any ambiguity which AVM found in the complaint, says Joiner, should have been resolved by AVM through the medium of discovery.
 
 
 7
 We cannot agree. The complaint should give the defendant fair notice of the claim asserted. Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Continental Collieries, Inc. v. Shober, 130 F.2d 631, 635 (3d Cir. 1942); 2A J. Moore, Federal Practice, P 8.13 at 1695. Joiner's complaint, reproduced here,[5] nowhere mentions underpayment by AVM prior to repudiation. Paragraph 7 of the first count, paragraph 6 of the second and third counts, and paragraph 7 of the fourth count, appear to predicate recovery on profits lost subsequent to repudiation. This predicate is particularly apparent in the references to "business which would have otherwise been derived by defendant's continued contractual relationships," in counts 1, 3 and 4.
 
 
 8
 The district court would have been well within its discretion in granting a Rule 15(a) motion to amend the complaint to include pre-repudiation damages, but Joiner never filed such a motion. Similarly, a Rule 16 (F.R.Civ.P. 16) conference and pre-trial order would have exposed and corrected the latent misunderstanding with respect to the claims asserted, but the district court failed to avail itself of this salutory procedure. This court has consistently emphasized the importance and controlling nature of pre-trial procedures. See, for example, Ely v. Reading Company, 424 F.2d 758, 763-64 (3d Cir. 1970); Basista v. Weir, 340 F.2d 74, 85 (3d Cir. 1965); Payne v. Nabob, 302 F.2d 803, 806-07 (3d Cir. 1962). Under the circumstances presented here, namely a contract action involving the interpretation and application of two incomplete, written contracts, we believe the district court should have held a pre-trial conference pursuant to F.R.Civ.P. 16 in this case.
 
 
 9
 For the foregoing reasons, we conclude that Joiner's complaint did not provide the defendant sufficient notice of the pre-repudiation claim to justify the court's charging the jury on that issue. We must, therefore, turn to the question whether the issue was actually tried with the consent of the parties. See Smith v. Ellerman Lines, Ltd., supra ; F.R.Civ.P. 15(b).
 
 
 10
 Joiner relies on the testimony of one Davis that prior to repudiation Joiner was paid less than the contracts required. N.T. 3.6-3.7. This testimony in itself is not dispositive of the issue; the question remains whether the testimony was received for the purpose of proving the proper measure of profits lost after repudiation or whether it was received for the purpose of proving damages incurred prior to repudiation. After Davis had testified to the underpayment prior to repudiation, Mr. Brennan, counsel for AVM, objected that this issue was not raised by the complaint:
 
 
 11
 "The Court: You should have gotten more money?
 
 
 12
 "The Witness: We should have gotten more money and their payments were of a nature when they would make payments it was hard for us to discern what the actual payment was for and they would lump payments of Joiner Systems and Systems Sales together and so on.
 
 
 13
 "The Court: Did you ask them at any time to separate those?
 
 
 14
 "The Witness: I most assuredly did. I was advised by their people, by Mr. Kolbacker and J. T. Lyons, that . . . it is all one company. You disburse it the way you want to.
 
 
 15
 "Mr. Brennan: Your honor, this is an issue. I gather that from what Mr. Davis has said in his remarks to your honor that the plaintiff is now complaining that they were not paid enough for the work which they did.
 
 
 16
 "Your honor, there is not a whisper of that in the complaint.
 
 
 17
 "Mr. Daggett: We are not talking about that. We are establishing a quantum of damages here."
 
 
 18
 N.T. 3.8-3.9 (397A-398A).
 
 
 19
 Although Mr. Daggett, counsel for Joiner, responded that they "were not talking about that," in his direct examination of Mr. Davis, he returned again to the topic of damages prior to repudiation, and Mr. Brennan again objected:
 
 
 20
 "Q. Now, Mr. Davis, are you able, based on your figures and the overall contract price that you spoke about, to break out an average of the profit derived by Joiner from these contracts?
 
 
 21
 "Mr. Brennan: Your honor, I still object, notwithstanding counsel's clarifying remarks to your honor, because in all cases the figures the witness is going to use, remember, are his opinion of what the profit should have been, not his testimony of what the profit was, and for that reason, your honor, I object to any percentage based upon the witnesses opinion of what his profit should have been.
 
 
 22
 "Mr. Daggett: Well, if your honor please, this contract covered what the profit should have been. This set up all of the guide lines for profit. That is what we are suing here on, these contracts for lost profit over the period of time of this contract.
 
 
 23
 "The Court: Well, didn't you just give us the testimony of what you said your profits should have been?
 
 
 24
 "The Witness: Yes, sir, your honor. Those are the profits as they should have been.
 
 
 25
 (Jury excused.)"Mr. Daggett: Judge, we have a problem.
 
 
 26
 "The Court: Yes, sir.
 
 
 27
 "Mr. Brennan: Your honor, I think I am getting a handle on this now and that what is happening is that apparently A.V.M. interpreted the charges which it could legitimately make against the price of the panel under the formula which Mr. Daggett has set forth in the fashion differently from the way the plaintiff feels those charges should have been handled and what we are going to do, your honor, is be handling an entirely new lawsuit now because apparently what the plaintiff is saying is that A.V.M. did not pay it enough for the orders which the plaintiff completed for A.V.M.
 
 
 28
 "Now, I would object to that, your honor, because there is not a whisper of that complained of in the complaint and the only measure of damages, the only basis to add the measure of damages, is not what Mr. Davis, the self-qualified expert in everything, feels that he should have gotten but in fact what did A.V.M. pay Joiner for the work orders which A.V.M. performed for Joiner and which A.V.M. purchased from Joiner."
 
 
 29
 N.T. 3.37, 3.39-3.40 (366AA, 368AA-369AA).
 
 
 30
 There ensued a rambling discussion in which the attorneys and the court attempted apparently for the first time to define the damage issues. The matter was concluded when Mr. Daggett said, "Judge, I will simplify the whole thing. Judge, I will withdraw the question." N.T. 3.46.
 
 
 31
 At that point, Mr. Daggett could have moved the court under Rule 15(b) to amend the complaint to conform to the evidence. He did not do so. Instead, he withdrew the objectionable question and apparently abandoned the topic. Considering the entire record, including all these factors, we must conclude that the issue of pre-repudiation damages was not tried with the consent of the defendants. Since this issue was neither raised by the complaint nor tried, it was reversible error for the district court to put the issue before the jury in its charge.
 
 
 32
 We have considered the other assertions of error made by both parties and have found all of them to be without merit. Thus, it appears that there was no error in the jury's determination that Joiner was entitled to a profit of $.20 per square foot on the paneling, and that the only fault was in the district court's allowing them to apply this measure to the 218,336 square feet manufactured prior to repudiation. In order to save the plaintiff the expense and risk of a new trial, we will, therefore, withhold entry of judgment for a period of fifteen (15) days, within which time the plaintiff may, if it so elects, file in the office of the Clerk of the district court a remittitur of the damages in excess of $34,261.60 ($.20 per square foot times 171,308 square feet), and file a certified copy thereof in the office of the Clerk of this court. If such a remittitur is filed, the judgment of the district court, less the amount remitted, will be affirmed; otherwise, the judgment will be reversed and a new trial ordered. See Smyth Sales v. Petroleum Heat & Power Co., 141 F.2d 41, 45 (3d Cir. 1944); 6A J.Moore, Federal Practice, P 59.05 (3) at 59-64 to 59-67.
 
 
 33
 Costs shall be taxed against plaintiff, which is appellee and cross-appellant.
 
 EXHIBIT A
 
 34
 Plaintiff, Joiner Systems, Inc., a New Jersey Corporation, having its principal offices in the Borough of Rutherford, County of Bergen, State of New Jersey complaining of the defendants says:
 
 First Count
 
 35
 1. At the time or times herein stated, and prior thereto, plaintiff was a corporation of the State of New Jersey engaged in the business of selling certain fireproof and or fire retardant materials for use in accordance with Coast Guard specifications for such materials to be used in the construction of sea going vessels.
 
 
 36
 2. Defendant was and still is a corporation organized and existing under the laws of the State of Delaware, having its principal offices in the City of Jamestown, New York.
 
 
 37
 3. On or about October 29, 1970 plaintiff and defendant, AVM Corporation, entered into an agreement whereby plaintiff in exchange for good and valuable consideration and mutual covenants, did give unto defendant, AVM Corporation, herein, certain secret knowledge, skill and information relative to the lamination of said fireproof and or fire retardant materials.
 
 
 38
 4. Defendant, AVM Corporation, has converted said knowledge, skill and information to its own use and has violated confidentiality agreements and has used said information for its own gain and profit, all to the detriment of plaintiff.
 
 
 39
 5. On or about December 20, 1971 defendant, AVM Corporation, repudiated said agreement and notified plaintiff that it no longer considered itself bound by said agreement.
 
 
 40
 6. Plaintiff has always been ready, able and willing and has offered to continue to honor said agreement according to the terms set forth therein, but defendant, AVM Corporation, has not permitted plaintiff to do so.
 
 
 41
 7. As a result, plaintiff, has lost and been deprived of profit and business which would have otherwise been derived by defendant's continued contractual relationship.
 
 
 42
 Wherefore plaintiff demands judgment against the defendant, AVM Corporation, together with costs of suit.
 
 Second Count
 
 43
 1. Plaintiff repeats each and every allegation contained in the first count of this complaint and incorporates them herein.
 
 
 44
 2. On or about October 29, 1970 plaintiff entered into an agreement with defendant, AVM Corporation, whereby for mutual covenants and good and valuable consideration defendant agreed to manufacture at the request of plaintiff certain fireproof and or fire retardant materials for use in accordance with present Coast Guard specifications for the manufacture of sea going vessels.
 
 
 45
 3. On or about October 29, 1970 plaintiff agreed and contracted that it would order from defendant, AVM Corporation, said fireproof and or fire retardant materials and defendant agreed that it would supply said materials according to plaintiff's demand.
 
 
 46
 4. Relying upon these mutual covenants and agreements, plaintiff gave to defendant, AVM Corporation, certain knowledge, skill, and information relative to the lamination of certain fireproof and or fire retardant materials as described above.
 
 
 47
 5. On or about December 20, 1971 defendant, AVM Corporation, notified plaintiff that it no longer considered itself bound by said contract and has refused to manufacture for plaintiff said fire retardant and or fireproof materials as contemplated by said agreement.
 
 
 48
 6. As a result plaintiff has lost and been deprived of profits and business which would otherwise have been derived from the sale of said materials to be manufactured by defendant, AVM Corporation, under the terms of the agreement referred to above.
 
 
 49
 Wherefore plaintiff demands judgment against the defendant, AVM Corporation, on this count together with costs of suit.
 
 
 50
 Plaintiff hereby demands a trial by jury on all issues.
 
 Count Three
 
 51
 1. Plaintiff repeats each and every allegation contained in the first and second count and incorporates them herein.
 
 
 52
 2. On or about October 29, 1970 plaintiff entered into an agreement with defendant, AVM Corporation of Maryland, Inc. and National Industries, Inc. On the same date plaintiff entered into a second agreement between plaintiff and National Industries, Inc. alone.
 
 
 53
 3. On or about September 17, 1971 defendant, AVM of Maryland, Inc., purchased all of the assets and contractual obligations of National Industries.
 
 
 54
 4. At all times referred to herein and at times prior to the dates set forth herein National Industries was in fact operated and controlled by defendant, AVM Corporation, Inc.
 
 
 55
 5. On or about September 17, 1971 AVM of Maryland, Inc. actually conducted the business of National Industries and held itself out in place of National Industries.
 
 
 56
 6. Defendant, AVM of Maryland, Inc. has accepted and used said information, skill and knowledge relative to the lamination of certain fireproof and or fire retardant materials as referred to above all to the detriment of plaintiff. Defendant, AVM of Maryland, Inc. has converted said knowledge, skill and information relative to the lamination of certain fireproof and or fire retardant materials as referred to above, for its own profit and gain and has refused to honor the aforesaid referred to agreements of October 29, 1970. Plaintiff has always been ready, willing, able and has offered to continue in the contractual relationship contemplated by the agreements of October 29, 1970, but defendant has refused to do so.
 
 
 57
 As a result plaintiff has lost and been deprived of profits and business which would have otherwise been derived from the continued contractual relationship as contemplated by the agreements of October 29, 1970.
 
 
 58
 Wherefore plaintiff demands judgment against defendant on this count together with costs of suit.
 
 Fourth Count
 
 59
 1. Plaintiff repeats each and every allegation contained in the first, second and third counts and incorporates them herein.
 
 
 60
 2. On or about October 29, 1970 plaintiff entered into an agreement with the defendant, AVM Corporation and National Industries, Inc. and a second agreement with National Industries alone.
 
 
 61
 3. At all times referred to herein and at times prior to the dates set forth herein National Industries, Inc. was controlled and operated by defendant, AVM Corporation of Maryland, Inc., and all the assets of said National Industries, Inc. were purchased by AVM of Maryland, Inc.
 
 
 62
 4. Defendant, AVM of Maryland, Inc. has repudiated said agreements and has refused to honor the contractual relationships contemplated therein.
 
 
 63
 5. Defendant, AVM of Maryland, Inc. has specifically refused to manufacture fireproof and or fire retardant materials at the request of plaintiff as contemplated by said agreements all to the detriment of plaintiff herein.
 
 
 64
 6. Plaintiff has always been able and willing and has offered to continue said contractual relationship, but defendant has refused to do so.
 
 
 65
 7. As a result plaintiff has lost and been deprived of profits of business which it would otherwise have derived from the continued contractual relationship as contemplated by the agreements of October 29, 1971.
 
 
 66
 Wherefore plaintiff demands judgment against the defendant on this count together with costs of suit.
 
 
 67
 George T. Daggett Attorney for Plaintiff
 
 
 
 [1]
 The agreements appear at App. 598A-601A
 
 
 [2]
 An entity called National Industries, Inc. was also a party to this agreement. App. 598A-599A. Apparently, AVM was the successor in interest to National Industries, Inc.; this question was not a subject of the litigation
 
 
 [3]
 The following appears to be the only charge on the issue of prerepudiation damages:
 "In this connection, your assessment of damages must be limited to the application of the sum ranging from six cents to twenrt (sic) cents because that is the testimony. One says six cents was the proper amount and another says he wanted twenty cents per square foot for a hundred and seventy-one thousand three o eight square feet of fire-retardant marine panels which AVM manufactured for its own use after the contractual relationships between it and the plaintiff ended.
 "Of course, you must also consider whether they were entitled to a larger amount of profits on the original order of the sum of three thousand. I hope you understand that."
 N.T. 5.63. It is unclear what "the original order of the sum of three thousand" means. The judge may have been referring to an original order of three hundred thousand, cf. N.T. 5.58, using a round figure either for the entire production sum, or for the pre-repudiation sum.
 
 
 [4]
 The jury's verdict of $64,978.63 is the product of $.20 per square foot times 389,644 square feet (218,336 square feet plus 171,308 square feet) total production, less $12,950.17
 
 
 [5]
 The complaint is set forth in Exhibit A attached to this opinion